## BANK OF THE REPUBLIC *v.* MILLARD.

1. The holder of a bank check cannot sue the bank for refusing payment in the absence of proof that it was accepted by the bank or charged against the drawer.
2. The fact that the check was properly drawn on a National bank (a public depositary) by an officer of the government in favor of a public creditor, does not alter this general rule.

IN error to the Supreme Court of the District of Columbia, the case being this:

Millard, a captain in the military service of the United States, was, in 1865, on leaving the service, a creditor of the government for $859, arrears of pay as captain. In settlement of this account the proper paymaster of the army drew and issued a check for that sum upon The National Bank of the Republic, a *depositary of public moneys and financial agent of the United States*, for the custody, transfer, and disbursement of the government funds, having funds for the payment of the check.

The bank, as testimony tended to show, had once paid the check on a forged indorsement of Millard's name. Ascertaining and exposing the forgery, and recovering possession of the check, Millard now presented the same, demanding

payment to himself. This payment the bank refused to make. Thereupon he sued it, declaring on a special count on the transaction, and also on a general count for money had and received by the bank to his use.

On the trial the bank requested the court to charge, " that unless the jury were satisfied from the evidence that it *accepted* the check in favor of the plaintiff, or his assignees, or promised to pay the same to the plaintiff, or his assignees, he was not entitled to recover." But the court refused so to charge, and verdict and judgment having gone against the bank, it brought the case here on error; the questions here argued and considered being: 1st. The general one,— whether the holder of a bank check could sue the bank for refusing payment in the absence of proof that it was accepted by the bank *or charged against the drawer.* 2d. If not, whether the fact existing in this particular case, that the check was on a National bank (a public depositary of the government funds) by an officer of the government, in favor of a public creditor, varied the general rule.

*Mr. Edwin L. Stanton, in support of the judgment below:*

1. It may be admitted that the holder of *a bill of exchange* might not be able to sue without acceptance or a promise of it; but no argument from analogy can hence be made against such right in the holder of a common check drawn against funds confessedly existing on deposit.

A bill of exchange is, *primâ facie*, a single transaction between the drawer and the drawee; the latter does not hold himself out as the custodian and disburser of the former's money. He may not be a debtor to him at all. And even if he has money belonging to him, though an order to pay over the exact sum would, on notice, operate as an equitable assignment, yet he is under no obligation to pay it out in fragments, nor to several persons. Hence, in the case of a bill of exchange, a necessity may arise for the drawee's acceptance. It is recognition by him of the drawer's competence to give the direction expressed by the bill.

But bank checks are drawn on common repositories where

many persons agree to keep their cash, to be always and immediately ready at their call or subject to their directions, in any amount, to any and every payee. Such checks, therefore, require no acceptance. In point of fact, none is ever given or thought of being asked for in regard to them. No custom is more prevalent, none more practically affects the dealings of men, than the usage and regular course of business out of which arise an understanding and expectation that a check, upon presentment for payment (if the drawer has the money on deposit to meet it), transfers to the holder the title to the money it calls for, and will at once be paid. Upon the strength and convenience of this usage and understanding, checks pass from hand to hand like cash, and are used in most payments and settlements between individuals and between banks.

The right of the holder to sue without acceptance has been sustained in Illinois, in *Munn* v. *Burch;** in South Carolina in two cases,† as also in Louisiana.‡ And this right rests upon what is said by this court in *Mandeville* v. *Welch,*§ that "an obligation to accept may be fairly implied from the custom of trade or the course of business between the parties as part of their contract."

2. But *this* plaintiff, an officer of the government, had a special and indeed a statutory right. The National Bank of the Republic was not a bank holding the deposits of a common customer and transacting ordinary banking business. It was a financial agent of the United States; a depositary and disburser of its funds; directly and completely the representative of the government, because the government can only act through its proper agent. The plaintiff

---

* 25 Illinois, 35; see also Chicago Marine Insurance Co. *v.* Stanford, 28 Id. 168.

† Fogarties *v.* State Bank and Ambler *v.* State Bank, 12 Richardson's Law, 518.

‡ Vanbibber *v.* Louisiana Bank, 14 Louisiana Annual, 481.

§ 5 Wheaton, 286; and see Carnegie *v.* Morrison, 2 Metcalf, 381; Weston *v.* Barker, 12 Johnson, 276; Russell *v.* Wiggin, 2 Story, 237; Brewer *v.* Dyer, 7 Cushing, 337; 3 Kent, 105, note A; Beawes' Lex Mercatoria, 371.

was a creditor of the United States. The money for his payment was appropriated by law; his demand was admitted and definitely ascertained and payable in money. The bank, as agent of the government, held the sum set apart for his payment. It held it therefore to his use, payable on his proper demand, which was the presentment of this check. By statute, the refusal of such an agent to obey such an order and promptly pay such a check is, upon trial of an indictment, *primâ facie* evidence of embezzlement. Claiming credit for payment without having made payment is conversion of the amount, punishable by fine and imprisonment.*

*Messrs. Bradley and Cox, contra.*

Mr. Justice DAVIS delivered the opinion of the court.

The only question presented by the record which it is material to notice is this: Can the holder of a bank check sue the bank for refusing payment, in the absence of proof that it was accepted by the bank, or charged against the drawer?

It is no longer an open question in this court, since the decision in the cases of *The Marine Bank* v. *The Fulton Bank*† and of *Thompson* v. *Riggs*,‡ that the relation of banker and customer, in their pecuniary dealings, is that of debtor and creditor. It is an important part of the business of banking to receive deposits, but when they are received, unless there are stipulations to the contrary, they belong to the bank, become part of its general funds, and can be loaned by it as other moneys. The banker is accountable for the deposits which he receives as a debtor, and he agrees to discharge these debts by honoring the checks which the depositors shall from time to time draw on him. The contract between the parties is purely a legal one, and has

---

* Act of Feb. 25, 1863, 12 Stat. at Large, 668; Act of June 3, 1864, 13 Id. 99; Act of Aug. 6, 1846, 9 Id. 59; McCulloch v. Maryland, 4 Wheaton, 316; Osborn v. U. S. Bank, 9 Id. 738; Kennedy v. Gibson, 8 Wallace, 498.

† 2 Wallace, 252.          ‡ 5 Id. 663.

nothing of the nature of a trust in it. This subject was fully discussed by Lords Cottenham, Brougham, Lyndhurst, and Campbell, in the House of Lords, in the case of *Foley* v. *Hill*,\* and they all concurred in the opinion that the relation between a banker and customer, who pays money into the bank, or to whose credit money is placed there, is the ordinary relation of debtor and creditor, and does not partake of a fiduciary character, and the great weight of American authority is to the same effect.

As checks on bankers are in constant use, and have been adopted by the commercial world generally as a substitute for other modes of payment, it is important, for the security of all parties concerned, that there should be no mistake about the status, which the holder of a check sustains towards the bank on which it is drawn. It is very clear that he can sue the drawer if payment is refused, but can he also, in such a state of case, sue the bank? It is conceded that the depositor can bring assumpsit for the breach of the contract to honor his checks, and if the holder has a similar right, then the anomaly is presented of a right of action upon one promise, for the same thing, existing in two distinct persons, at the same time. On principle, there can be no foundation for an action on the part of the holder, unless there is a privity of contract between him and the bank. How can there be such a privity when the bank owes no duty and is under no obligation to the holder? The holder takes the check on the credit of the drawer in the belief that he has funds to meet it, but in no sense can the bank be said to be connected with the transaction. If it were true that there was a privity of contract between the banker and holder when the check was given, the bank would be obliged to pay the check, although the drawer, before it was presented, had countermanded it, and although other checks, drawn after it was issued, but before payment of it was demanded, had exhausted the funds of the depositor. If such a result should follow the giving of checks,

---

\* 2 Clark and Finnelly, 28.

it is easy to see that bankers would be compelled to abandon altogether the business of keeping deposit accounts for their customers. If, then, the bank did not contract with the holder of the check to pay it at the time it was given, how can it be said that it owes any duty to the holder until the check is presented and accepted? The right of the depositor, as was said by an eminent judge,* is a chose in action, and his check does not transfer the debt, or give a lien upon it to a third person without the assent of the depositary. This is a well-established principle of law, and is sustained by the English and American decisions.†

The few cases which assert a contrary doctrine, it would serve no useful purpose to review.

Testing the case at bar by these legal rules, it is apparent that the court below, after the plaintiff closed his case, should have instructed the jury, as requested by the defendant, that the plaintiff, on the evidence submitted by him, was not entitled to recover. The defendant did not accept the check for the plaintiff, nor promise him to pay it, but, on the contrary, refused to do so. If it were true, as the evidence tended to show, that the bank, before the check came to the plaintiff's hands, paid it on a forged indorsement of his signature, to a person not authorized to receive the money, it does not follow that the bank promised the plaintiff to pay the money again to him, on the presentation of the check by him for payment.

*It may be,* if it could be shown that the bank had charged the check on its books against the drawer, and settled with him on that basis, that the plaintiff could recover on the

* Gardiner, J., Chapman v. White, 2 Selden, 417.

† Chapman v. White, 2 Selden, 412; Butterworth v. Peck, 5 Bosworth, 341; Ballard v. Randall, 1 Gray, 605; Harker v. Anderson, 21 Wendell, 373; Dykers v. Leather Manufacturing Co., 11 Paige, 616; National Bank v. Eliot Bank, 5 American Law Register, 711; Parsons on Bills and Notes, edition of 1863, pp. 59, 60, 61, and notes; Parke, Baron, in argument in Bellamy v. Majoribanks, 8 English Law and Equity, 522, 523; Wharton v. Walker, 4 Barnewall & Cresswell, 163; Warwick v. Rogers, 5 Manning & Granger, 374; Byles on Bills, chapter "Check on a Banker;" Grant on Banking, London edition, 1856, 96.

count for money had and received, on the ground that the rule *ex æquo et bono* would be applicable, as the bank, having assented to the order and communicated its assent to the paymaster, would be considered as holding the money thus appropriated for the plaintiff's use, and therefore, under an implied promise to him to pay it on demand.

It is hardly necessary to say, that the check in question having been drawn on a public depositary, by an officer of the government, in favor of a public creditor, cannot change the rights of the parties to this suit. The check was commercial paper, and subject to the laws which govern such paper, and it can make no difference whether the parties to it are private persons or public agents.*

As soon as the deposit was made to the credit of Lawler as paymaster, the bank was authorized to deal with it as its own, and became answerable to Lawler for the debt in the same manner that it would have been had the deposit been placed to his personal credit.

JUDGMENT REVERSED AND A VENIRE DE NOVO AWARDED.

* The United States *v.* Bank of Metropolis, 15 Peters, 377.