46  255
70  760

## ADAM W. CREVELING ET AL. v. BLOOMSBURY NATIONAL BANK.

The holder of a check on a bank cannot sue the bank for refusal to pay it on presentation, though the drawer have sufficient on deposit to meet it.

----

On demurrer to declaration.

This suit was brought by the payees of checks or orders on the defendant, a banking corporation, which on presentation were refused payment, on January 20th, 1877. The material averments are that one Jacob W. Cole deposited money in the bank, gave his checks or orders to the plaintiffs to pay them $500, which the bank refused to pay, and have fraudulently appropriated the said sum to their own use, or to the use of some other person or persons, without the knowledge or consent of the plaintiffs, or the persons to whom they passed the checks.

Argued at February Term, 1884, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, SCUDDER and VAN SYCKEL.

For the plaintiffs, *Oscar Jeffery.*

For the defendants, *C. F. Fitch.*

The opinion of the court was delivered by

SCUDDER, J.   On general demurrer to this declaration the question is raised whether the holder or payee of a check can sue the bank on which it is drawn for a refusal to pay it, where the check is regularly made, delivered, presented for payment, and the maker has funds in the bank on deposit sufficient to pay it.   Decidedly opposing views are held in different courts on this point, and the subject has been very fully discussed in cases and text-books.   I consider the law well settled in our state on what has been regarded as the weight of authority and the usage of banks and their dealers for many years.   Our reports are silent on this subject, because no such action has been brought, or if brought it has not been supposed to be maintainable.   Checks have been classed generally with inland bills of exchange, though differing in some respects, and held not binding on the drawee until there has been a presentation and acceptance by the bank in some form.   Being payable on demand, such acceptance is by payment, or by credit given to the holder, and charge against the drawer, or by certification.   If unpaid on presentation the holder has his remedy against the maker or endorser; and the maker has his against the bank for damages sustained to this credit, or otherwise, by the illegal refusal to pay his check when drawn against funds remaining in the bank.   Cases that I have examined in our reports do not directly meet the question at issue here, and because there has been doubt expressed by some text-writers, and dissent in some courts of other states, I have thought it advisable briefly to review some of the more prominent cases to learn whether we are right in the position we have assumed.   Having no binding authority in our state we are free to accept the rule which is best approved and supported by authority and usage elsewhere.   The question is very fairly discussed in 2 *Dan. Neg. Inst.,* § 10, ¶

1635; in *Morse on Banking* 459, and 2 *Pars. N. & B.* 61, 62

A few of the later cases which refer to others, state the rule and the reasons for it, which, in my judgment, should be adopted in this state as governing this subject. *Bank of Republic* v. *Millard,* 10 *Wall.* 152, expressed the unanimous opinion of the Supreme Court of the United States. They say that on principle there can be no foundation for an action on the part of the holder of a check, unless there is a privity of contract between him and the bank, and ask how can there be such privity when the bank owes no duty, and is under no obligation to the holder? Quoting from a leading case, (*Chapman* v. *White,* 2 *Seld.* 417,) they further say that the right of the depositor is a chose in action, and his check does not transfer the debt or give a lien upon it to a third person without the assent of the depositary. This is said to be a well-established principle of law, and sustained by the English and American authorities. In *Attorney-General* v. *Continental Life Ins. Co.,* 71 *N. Y.* 325, the entire court say that *Lunt* v. *Bank of North America,* 49 *Barb.* 221, declares the rule accurately, that checks drawn in the ordinary form, not describing any particular fund, or using any words of transfer of the whole, or any part of any account standing to the credit of the drawer, but containing only the usual request, are of the same legal effect as in inland bills of exchange, and do not amount to an assignment of the funds of the drawer in the bank. This they say is the settled law of that state, as it has been repeatedly affirmed in that court. In *Ætna National Bank* v. *Fourth National Bank,* 46 *N. Y.* 86, Allen, J., in giving the opinion of the court, says the cases all agree that notwithstanding the agreement which bankers make with their customers to pay them checks to the amount standing to their credit, a check-holder can take no benefit from this agreement, and that the check does not operate as a transfer or assignment of any part of the debt, or create a lien at law or in equity. *Carr* v. *National Security Bank,* 107 *Mass.* 45, after discussing the question, concludes that the bankers' promise to the

drawee to honor his checks does not render them, while still liable to account with him for the amount of any check as part of his general balance, liable to an action of contract by the holder also, unless they have made a direct promise to the latter by accepting the check when presented, or otherwise. This view, they say, is in accordance with the law as established in England, in New York and in Pennsylvania, with the opinions theretofore expressed by that court, and with the recent unanimous decision of the Supreme Court of the United States. *Bank of the Republic* v. *Millard*, above cited.

To the same effect is *Lloyd* v. *McCaffrey*, 46 *Penna. St.* 410, 414, and *Mason* v. *Franklin Bank*, 34 *Md.* 580.

Two recent English cases have considered the right of the holder of a check against bankers. In *Hopkinson* v. *Forster*, *L. R.*, 19 *Eq.* 74, Sir George Jessel, Master of the Rolls, says a check is clearly not an assignment of money in the hands of a banker; it is a bill of exchange payable at a banker's. The banker is bound by his contract with a customer to honor the check when he has sufficient assets in his hands; if he does not fulfil his contract he is liable to an action by the drawer, in which heavy damages may be recovered if the drawer's credit has been injured. He also says, "I do not understand the expressions attributed to Mr. Justice Byles, 8 *C. B.* (*N. S.*) 372, but I am quite sure that learned judge never meant to lay down that a banker who dishonors a check is liable to a suit in equity by the holder." The other English case to which I have reference is *Schroeder* v. *Central Bank of London*, 34 *L. T.* (*N. S.*) 735. The statement of the claim in this case was on a check payable to bearer, on the defendants, which was handed to the plaintiffs, who presented the check to the defendants at their bank for payment, but payment was refused, and the check marked, "refer to drawer;" and that at the time when they refused payment of the check the defendant had funds belonging to the drawer to an amount exceeding the sum for which the check was drawn. To this statement a demurrer was filed, on the ground that a banker on whom a check is drawn is under no liability to the holder of the check to pay the same. That is the present

Creveling v. Bloomsbury National Bank.

case, in all particulars; and the court say a check is not an assignment by the drawer to the payee of a debt, or chose in action, within the meaning of the Judicature act of 1873, section 25, subsection 6. Therefore the payee of a check has no right of action for its dishonor against the banker on whom it is drawn. Neither is the check in this case an assignment under section 19 of the Practice act, which will authorize the holder or assignee to sue in his own name.

It will be found that some of the cases in this country, above referred to, have considered those that hold a contrary rule, which are comparatively few in number, and have refused to follow them. The grounds for their conclusions above stated in the cases quoted, are so satisfactory that nothing can be added to give weight to their authority. The opposite view may be briefly stated, that before demand for payment of the check has been made of the banker there is no assignment and no privity between the holder and the banker; but the act of presentment and demand, made before the appropriation of the funds in hand, creates, by usage of business and the understanding of all concerned, the obligation, the privity and the appropriation, or at least the right to claim appropriation. *Morse on Banking* 471. Where no such understanding or usage exists, and the banker has no contract with the holder of a check, and on presentation of the check promptly refuses to honor it, it is difficult to see by what act on his part the privity between him and the holder of the check is established.

The question can rarely be raised between a solvent bank and its depositors, except where there are counter claims held by the bank against the depositors, or questions of overdraft, priority of checks or notice stopping payment, and these the bank should have the right to settle directly with its customer, and not be annoyed by many suits on checks in the hands of third parties among whom the deposits may have been divided. Whatever other reasons may be suggested on the one side or the other, it is sufficient to say that in our judgment the weight of authority is against the maintenance of this action, and judgment will be given for the defendant on the demurrer.