(155 App. Div. 509.)

## MORRISON v. CHAPMAN et al.

(Supreme Court, Appellate Division, First Department.  March 7, 1913.)

1. PRINCIPAL AND AGENT (§ 105*)—AUTHORITY OF AGENT—MANAGER OF BROKER'S BRANCH.

The general manager in charge of a broker's branch office, through whom orders given by customers were habitually executed by the broker, and from whom payments by customers were habitually received and credited by the broker, in taking a customer's check in payment for stock purchased, was acting within the apparent scope of his authority.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 298–310, 374;  Dec. Dig. § 105.*

2. PRINCIPAL AND AGENT (§ 116*)—AUTHORITY OF AGENT—UNDISCLOSED LIMITATION OF AUTHORITY.

Where an agent acts within the apparent scope of his authority, his secret instructions, if any, are immaterial to one dealing with him without knowledge thereof.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 377, 377½;  Dec. Dig. § 116.*]

3. PRINCIPAL AND AGENT (§ 105*) — PAYMENT BY CHECK — CONVERSION BY AGENT.

While the delivery of a check does not of itself constitute payment of a debt, yet where a customer of defendant, a broker, gave his check to defendant's branch manager, authorized to receive and transmit it to defendant, and had funds in the bank to meet it and it was duly paid on presentation, the transaction as between the customer and defendant amounted to a payment, even though the manager had forged defendant's indorsement and absconded with the money; the principle being that defendant, having put the manager in a position to perpetrate the wrong, should suffer the loss, instead of the customer; and the fact that, because of an action over against the bank on which his check was drawn for having paid upon a forged indorsement, the customer might suffer no loss, does not change the result, since he could not be subjected to the expense and hazard of a lawsuit to rectify the fraud committed by defendant's manager.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 298–310, 374;  Dec. Dig. § 105.*]

For other definitions, see Words and Phrases, vol. 6, pp. 5247–5253; vol. 8, p. 7749.]

4. BANKS AND BANKING (§ 148*)—PAYMENT OF CHECK—CHECK PAID ON FORGED INDORSEMENT—LIABILITY TO OWNER.

The owner of a check, whose manager authorized to receive it, forges his indorsement, and absconds with the money, and who has been charged with the amount as a payment by the maker, has a cause of action over against the bank which accepted the check, and paid the amount to the manager.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–446, 451, 452;  Dec. Dig. § 148.*]

5. APPEAL AND ERROR (§ 1151*)—DISPOSITION—AFFIRMANCE.

Where there is no dispute as to the facts, and no question for the jury, and it is apparent that the losing party upon a new trial could not produce any valid evidence to affect the result, a proper case is presented for making a final disposition, and, where such facts require an increase in the amount of the recovery, final judgment for such increased amount will be rendered, and the judgment affirmed as modified.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4498–4506;  Dec. Dig. § 1151.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

Appeal from Trial Term, New York County.

Action by John Morrison against Elverton R. Chapman and others. From a judgment in his favor entered upon a verdict by the court, and from an order denying a motion for new trial, plaintiff appeals. Modified and affirmed.

See, also, 63 Misc. Rep. 195, 116 N. Y. Supp. 522.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Charles E. Rushmore, of New York City, for appellant.

James M. Gifford, of New York City, for respondents.

SCOTT, J. This is an action against a firm of stockbrokers by a customer for a balance claimed to be due upon account, and the question involved is whether or not the plaintiff is entitled to be credited, as for money paid, with the amount of two checks delivered to the manager of defendants' branch office, and collected by him through forged indorsements of defendants' name. Defendants' principal office is in lower Broadway in the city of New York. At the time of the transactions out of which this controversy has arisen, they maintained several branch offices in the city of New York, one of which was situated in a business building at Thirty-Fourth street and Fifth avenue. The name of defendants' firm was displayed upon the door and windows of this office. It had been for several years in charge of one L. A. Cooper as its sole manager, who was in such complete control that the defendants rarely or never even visited the office. The letter heads used by Cooper, which were probably furnished by defendants, and must certainly have been used with their knowledge, bore the defendants' firm name and the words "L. A. Cooper, Manager." He solicited orders for the purchase and sale of stocks, which orders were transmitted to defendants and executed by them. He collected moneys from customers for stocks ordered purchased, and transmitted such moneys to defendants in checks or cash, as the case might be. When Cooper received checks or money from customers, credit entries were made in defendants' books at their main office in accordance with advices furnished by Cooper, and, when stocks were purchased pursuant to orders given through Cooper, defendants not only executed the orders, but sent to the purchaser the customary notices and statements of account. Among other transactions defendants purchased for plaintiff's account upon orders given to Cooper certain stocks for which defendants now claim that they were never paid, and the question we have to decide is whether or not payment therefore was made.

All of plaintiff's transactions with defendants were had through Cooper, and were conducted in identically the same manner. From time to time he delivered to Cooper in payment of moneys due to defendants six checks, all of which were drawn to defendants' order, and all of which, when they were returned to plaintiff, had been certified by the banks upon which they had been drawn. For the sum represented by the first four of these checks plaintiff duly received credit upon his account with defendants, indicating that the checks had been duly received and accepted by defendants from Cooper. Of the other

two checks, one for $19,425 was drawn on the bank of the Metropolis to defendants' order, and given to Cooper in payment of certain stocks which defendants bought, paid for, and delivered to plaintiff. The other check, for $2,789.50, drawn to defendants' order on the Corn Exchange Bank, was likewise given to Cooper in part payment of other stocks purchased by defendants for plaintiff.

Upon both of these checks Cooper forged defendants' indorsement, and, having done so, deposited them to his individual accounts in the Knickerbocker Trust Company and Astor Trust Company, respectively. He then drew out the money from these trust companies, and absconded with it. Plaintiff's checks were certified by the respective banks upon which they were drawn, and in due course were paid upon presentation. The question is whether upon these facts the plaintiff is entitled to a credit upon his account with defendants for the amount represented by the checks delivered to Cooper and fraudulently diverted by him.

[1, 2] As to the general authority of Cooper to receive money from customers, either in check or cash, for transmission to defendants, cannot be seriously disputed. He was put in open management of the branch office, orders given through him were habitually executed by defendants, and payments made to him were habitually received and credited by defendants. So far as concerns the business transacted through his office, he was held out to the world as the accredited agent and representative of the defendants. The plaintiff was fully justified, therefore, in paying his indebtedness to defendants by means of a payment to Cooper. Schultheis v. Caughey, 146 App. Div. 102, 130 N. Y. Supp. 373; Fuller v. Municipal Telegraph & Stock Co., 117 App. Div. 352, 102 N. Y. Supp. 154; affirmed, 192 N. Y. 546, 84 N. E. 1113. In taking plaintiff's checks Cooper was therefore acting within the apparent scope of his authority, and it is immaterial what secret instructions to the contrary, not known to plaintiff, he may have had. Newman v. Lee, 87 App. Div. 116, 84 N. Y. Supp. 106.

[3] The defendants, however, rely upon the general rule that delivery of a check for an indebtedness does not constitute payment of the debt. This, of course, is true enough, but, when a check is given in payment and the check is paid, the debt is paid. It is not disputed that plaintiff's checks were good when given, and were duly paid upon presentation, and the real question therefore is who shall suffer by reason of Cooper's rascality.

The question is not a new one. In Sage v. Burton, 84 Hun, 267, 32 N. Y. Supp. 1122, the defendant owing plaintiff for goods gave a check to one Abbott, a salesman for plaintiff, who, as the case states, "at times collected accounts for them and received checks of customers for accounts due plaintiff." Abbott forged plaintiff's name upon the check, and collected the cash. It was held that:

"So long as the defendant was authorized to make settlements with and payments to Abbott of all claims in favor of plaintiffs against him, the giving of checks and the subsequent payment of the same by the bank out of the funds of defendant was a payment by defendant so as to discharge him from liability to the plaintiffs."

And again:

"If it be held that Abbott in this transaction was not the alter ego of the plaintiffs, and had no authority to indorse this check, yet, if he was authorized by the plaintiffs to receive this check from the defendant, any misappropriation of its proceeds by him is at the risk of the party who set him in motion and put it in his power to perpetuate the wrong. Such party must suffer rather than the party who is in no wise accountable for, and has no control of the perpetration of the wrong." 84 Hun, 270, 32 N. Y. Supp. 1124.

This case was followed by Allen v. Tarrant & Co., 7 App. Div. 172, 40 N. Y. Supp. 114. Defendant, owing plaintiff for goods, gave a check to a salesman employed by plaintiff. This check was turned in to plaintiff, indorsed, and paid. A few days later the same thing occurred. Still later another check was given to the same salesman, who indorsed it in plaintiff's name, and then drew the money which he stole. This court said:

"It is true that the delivery of a check is not payment unless in some very special case, if such a case can be supposed, where the check is taken in absolute payment and extinguishment of the debt. Thomson v. Bank of B. N. A., 82 N. Y. 8. The delivery of the check to the principal or his authorized agent, and the subsequent payment of the check, operates to discharge an indebtedness for which it is given."

On the question of the agent's apparent authority to receive payment, the court said:

"Upon the question whether Cook was authorized to receive or indorse them (the checks), the evidence is that prior to the giving of the checks in dispute Cook received a check of defendants which was deposited to plaintiff's account in bank and paid by defendant. If plaintiff had desired to disavow Cook's action in receiving checks in settlement of accounts, then seemingly was the time to have notified plaintiff."

To the same effect is Morris v. Hofferberth, 81 App. Div. 512, 81 N. Y. Supp. 403, where the facts were very similar.

The latest case, and one very similar to the present, is Burstein v. Sullivan, 134 App. Div. 625, 119 N. Y. Supp. 317, wherein the gist of the opinion is contained in the following sentences:

"But where a debtor delivers his check to the creditor or his agent duly authorized to receive it, and has funds in the bank to meet the check, the transaction as between the debtor and the creditor should be treated as a payment precisely as though cash had been paid, even though the agent forges an indorsement and steals the money. Upon the delivery of the checks to Melle, in payment of the bill rendered by him, it became the plaintiff's property; and if their agent, by a forged indorsement or one made without sufficient authority, obtained the cash and appropriated it to his own use, they should settle the question with the bank."

It was clearly proven, and it is in effect conceded, that Cooper was defendants' agent, and that he had authority to receive money and checks for plaintiff's account. If he had received money, or a check drawn to bearer, there can, I think, be no doubt that payment to him would have been payment to defendants, and, if he had stolen the money, the loss would have fallen on defendants. As was said in Burstein v. Sullivan, supra:

"A payment to Melle in cash would have been a payment to plaintiff, though he had stolen the money, and the defendant should not be compelled

to pay twice or be subjected to the hazard of a lawsuit with the bank for having taken the precaution to protect the plaintiffs by making a check payable to their order."

It is no answer to plaintiff's claim to say that Cooper had no authority to indorse defendants' name upon the checks, and that his act in doing so was without his actual or apparent authority. If money had been paid to him, and he had stolen the money, that act would still have been without the scope of his authority, and still the loss would have fallen upon defendants and not upon the plaintiff. "The principal cannot so easily evade liability for the acts of his agent." Birkett v. Postal Telegraph Cable Co., 107 App. Div. 115–117, 94 N. Y. Supp. 918, affirmed 186 N. Y. 591, 79 N. E. 1101.

The underlying principle, which is well settled, is that, having put Cooper in a position to perpetuate the wrong, the defendants, and not plaintiff, must suffer the loss. Wilmerding v. Postal-Telegraph Cable Co., 118 App. Div. 685, 103 N. Y. Supp. 594; affirmed, 192 N. Y. 580, 85 N. E. 1118; Birkett v. Postal-Telegraph Cable Co., supra. As was said in Wolff v. Lockwood, 70 App. Div. 569–571, 75 N. Y. Supp. 605, 607:

"The defendants put Ranger (Cooper) in the position which enabled him to deceive them, and, as his agency was solely for them, it is apparent that, if no other element is introduced in the case, those who were invited by the defendants to deal with him on their account should not be made to suffer for his transgressions."

Finally, the defendants fall back upon the contention that plaintiff has suffered no loss on account of Cooper's fraud because he has a right of action over against the banks upon whom his checks were drawn for having paid upon a forged indorsement, and this seems to have been the view of the trial court. In the first place, as was said in Burstein v. Sullivan, supra, there is no reason why plaintiff should be subjected to the expense and hazard of a lawsuit to rectify the fraud committed by defendants' agent, and, in the second place, it is not entirely clear that such a suit would be successful. It was not clearly shown when the checks were certified, except that they were not certified when delivered to Cooper, and were certified before they were paid by the banks upon which they were drawn. If, as is probable, Cooper caused them to be certified before he endorsed them and deposited them to his own individual accounts, it might well be considered that, having authority to receive checks for transmission to dedefendants, he had also authority to cause them to be certified before transmission, and hence that in presenting these particular checks for certification he was acting within the scope of his authority, and that the certification had been made at the request of one authorized to request it.

[4] On the other hand, defendants apparently have a good cause of action over against the trust companies who accepted the checks and paid the amounts over to Cooper. Burstein v. People's Trust Co., 143 App. Div. 165, 127 N. Y. Supp. 1092. We are therefore unable to discern any principle upon which the judgment appealed from can be affirmed.

[5] There was no dispute as to the facts, and no question to go to the jury, as was recognized by both parties in asking for a direction of a verdict, and it is apparent that the case is not one in which the defendants could, upon a new trial, produce any relevant evidence to affect the result. A proper case is therefore presented for making a final disposition of the controversy.

The judgment appealed from will therefore be modified in increasing the amount of the recovery by the sums in dispute, with interest, and, as so modified, affirmed, with costs to the appellant. All concur.