(93 Misc. Rep. 541)

SIEGEL v. KOVINSKY.

(Supreme Court, Appellate Term, First Department. February 10, 1916.)

1. PAYMENT ⌬21—BY CHECK.
A check, except under extreme circumstances, will not be regarded as payment until it is actually paid.
[Ed. Note.—For other cases, see Payment, Cent. Dig. § 86; Dec. Dig. ⌬21.
For other definitions, see Words and Phrases, First and Second Series, Payment.]

2. BILLS AND NOTES ⌬429—CHECK—PAYMENT.
. A check cannot be regarded as having been paid, unless the amount therein called for has been paid, either to the payee, or to one authorized by him to receive the proceeds, or to one authorized to indorse his name thereon.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1245–1250, 1262, 1263; Dec. Dig. ⌬429.]

3. BILLS AND NOTES ⌬427—PAYMENT—MISAPPROPRIATION—RECOVERY BY PAYEE.
In the absence of an indorsement of a check by one authorized thereto by him, the payee, on a wrongdoer's appropriation of the check, may recover from the maker as his debtor.
[Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 1233–1244; Dec. Dig. ⌬427.]

4. BANKS AND BANKING ⌬148—CHECK—PAYMENT TO ONE OTHER THAN PAYEE—LIABILITY.
In such case the payee may also recover from the bank upon which the check is drawn as for a conversion of the check, or of its proceeds, by the bank's payment to one other than the payee.
[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 438–446, 451, 452; Dec. Dig. ⌬148.]

5. PRINCIPAL AND AGENT ⌬105—AUTHORITY OF AGENT—ESTOPPEL.
Where plaintiff, the seller of goods, did not expressly or impliedly hold out his salesman as having authority to receive money on plaintiff's behalf, or to indorse plaintiff's name on checks, plaintiff was not estopped from denying the salesman's authority to accept payment by check, as

⌬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

estoppel cannot be invoked merely because, or even if, the plaintiff was careless in the transaction of his business.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 298–310, 374; Dec. Dig. ☞105.]

6. PAYMENT ☞74—BY CHECK—RECEIPT.

The mere receipting of the maker's bill as paid upon the maker's delivery of a check to the payee's agent was not sufficient evidence that the check was received in payment, as no greater significance can attach to the act of the agent than to the act of the principal himself in giving such a receipt.

[Ed. Note.—For other cases, see Payment, Cent. Dig. §§ 138, 139, 226–231; Dec. Dig. ☞74.]

Appeal from Municipal Court, Borough of Manhattan, Second District.

Action by Jacob Siegel against Harry Kovinsky. From a judgment in favor of plaintiff, after trial by judge without a jury, defendant appeals. Affirmed.

Argued January term, 1916, before GUY, BIJUR, and GAVEGAN, JJ.

Loeb, Bernstein & Ash, of New York City (Max Ash, of New York City, of counsel), for appellant.

Samuel Hoffman, of New York City, for respondent.

BIJUR, J. Plaintiff sued for goods sold and delivered. Defendant pleaded payment. Plaintiff is the liquidating partner of the partnership of Siegel & Scheinbaum, which was doing business under the name of the S. & S. Silk Mills.

Defendant testified that one Schrager called upon him, representing the S. & S. Silk Mills, and sold him three lots of goods. Defendant received three separate bills for these goods, and paid the bills by three separate checks drawn to the order of the S. & S. Silk Mills, and given on three different occasions personally to Schrager, who then marked the bills "Paid." The first two of these checks Schrager gave to plaintiff's assignors, who accepted, deposited, and collected them. The third check Schrager converted to his own use by forging the payee's indorsement. One of plaintiff's assignors testified, without contradiction, that Schrager was merely a salesman on a 20 per cent. commission basis, with a drawing account of $5 a week, without authority either to collect money or indorse checks, and he added, speaking of the time when Schrager brought in the first two checks:

"I told him distinctly that I did not want him to bring me down these checks any more. I said: 'I do not want you to collect money for me. I can go myself.'"

Defendant, however, was never notified not to pay Schrager.

[1] On this appeal, nothing but a question of law is involved. We may start with the principle laid down by Rapallo, J., in Thomson v. Bank of British North Am., 82 N. Y. 1, 8:

"The case, then, presents the simple question whether a party paying his own debt by a check to the order of his creditor, or of a party nominated by his creditor, can be called upon to pay it again, in case the creditor loses or is

defrauded of the check, and it is paid to the finder or fraudulent holder, on a forged indorsement. We think this question should be answered in the *affirmative,* unless in some very special case, *if such a case can be supposed,* where the check was taken in absolute payment and extinguishment of the debt."

See also Smith v. Miller, 43 N. Y. 171, 173, 3 Am. Rep. 690.

[2] It being settled, therefore, that a check will not be regarded (except under extraordinary circumstances) as payment until it is actually paid, the question arises what significance is to be attached to its payment. To answer this question, it is first necessary to determine what we mean by payment. For juridical purposes, at least, a check cannot be regarded as having been paid unless the amount therein called for has been paid either to the payee or to one authorized by him to receive the proceeds, or to put it in a more popular phrase (almost invariably applicable) to one authorized by the payee to indorse his name thereon.

[3, 4] In the absence of such indorsement, it has been held repeatedly by our highest court that, where a wrongdoer has appropriated a check, the payee may either recover from the maker as his debtor (Thomson v. Bank, supra; Talbot v. Bank of Rochester, 1 Hill, 295), or from the bank upon which the check is drawn, as for conversion of the check or of its proceeds by their payment to one other than the payee (Robinson v. Chemical Nat. Bank, 86 N. Y. 404, which expressly approves the opinion in the court below, reported 10 W. Digest, 315). See also Johnson v. First Nat. Bank, 6 Hun, 124; Burstein v. People's Trust Co., 143 App. Div. 165, 127 N. Y. Supp. 1092.

There are, it is true, a number of expressions in the opinions in some cases which intimate a contrary rule; but when the cases are examined it will be found that they actually proceed upon the accepted general principle, but that the agent in those cases who indorsed was one who held the principal's adequate general or special authority in the premises. Thus it is said in one of the cases that if the agent—

"was authorized by the plaintiffs *to receive this check* from the defendant, any misappropriation of its proceeds by him is at the risk of the party who set him in motion and put it in his power to perpetrate the wrong. Such party must suffer rather than the party who is in no wise accountable for and has no control of the perpetration of the wrong." Sage v. Burton, 84 Hun, 267, 32 N. Y. Supp. 1122.

And again that:

"There is no reason why the maker of the check should be subjected to expense and the hazard of a lawsuit to rectify the fraud committed by the payee's agent." Morrison v. Chapman, 155 App. Div. 509, 515, 140 N. Y. Supp. 700, quoting from Burstein v. Sullivan, 134 App. Div. 623, 119 N. Y. Supp. 317.

There is language of the same import in Allen v. Tarrant & Co., 7 App. Div. 172, 40 N. Y. Supp. 1016, and Morris v. Hofferberth, 81 App. Div. 512, 81 N. Y. Supp. 403. On examination of the facts in these cases, however, it will be found, for example, that in the Morrison Case, at page 510 of 155 App. Div., at page 701 of 140 N. Y. Supp., it is said that the agent was authorized, among other powers:

To collect *"moneys* from customers and transmit such *moneys* to defendants [payees] in checks or *cash* as·the case might be."

In the Sage Case, supra:

"The plaintiff [payee] did not say that Cook [the agent] was not authorized to receive or indorse them [namely, the checks]."

Indeed, it was pointed out that plaintiff, the payee, had, prior to the institution of the suit, brought a criminal proceeding in which he charged his agent with grand larceny of the *proceeds* of the check— a charge which necessarily proceeded upon the theory either that the agent had been previously authorized to indorse and collect the proceeds of the check, or that his action in so doing had been ratified by the payee. In the Morrison Case it is mentioned that the learned trial judge left it to the jury to say whether *"this general and sweeping authority"* was given to Abbott (the agent). In other words, in these cases, and others to the same effect, the agent was either a general manager, with general authority to do the payee's entire business, or had specific authority to indorse checks, and no doubt it was this authority to which the opinions in these cases refer when they use expressions like "authority to receive checks," etc. For surely no greater authority to collect or receive the proceeds of a check is to be presumed in favor of one who merely goes from the payee's place of business to physically gather in the debtor's checks than in a bookkeeper or other employé, who remains at the payee's place of business and physically secures control of these checks by opening the mail. Yet, in cases disclosing the latter state of facts, it has been invariably held that the bookkeeper's forging the payee's name does not relieve the maker of the check as upon payment. Bernheimer v. Herrman, 44 Hun, 110; Dowdall v. Geo. Borgfeldt & Co., 113 N. Y. Supp. 1069.

[5] Whether an agent, other than one in general charge of the payee's business, having authority *merely* to collect money, is thereby impliedly authorized to indorse checks in the payee's name, does not seem to have been passed upon directly by the Court of Appeals. The decision in Prochownick v. Boyd, 48 Hun, 618, 1 N. Y. Supp. 359, affirmed 119 N. Y. 641, 23 N. E. 1148, does not go so far. But there is no pretense in the instant case that the employé, Schrager, had authority even to receive or collect *money* on behalf of plaintiff's assignors, and certainly none to indorse plaintiff's name on checks. Since, therefore, he was not authorized and does not claim that plaintiff held him out, expressly or impliedly, as having had such authority, there is no room for the application of the doctrine of estoppel. As is pointed out in Schmidt v. Garfield Bank, 64 Hun, 298, 306, 307, 19 N. Y. Supp. 252, this principle would apply only in the event of a holding out by the payee that the employé has *that* authority, and cannot be invoked merely because, or even if, the payee were careless in the transaction of his business.

Nor can a judgment in favor of defendant be justified by mere reasons of convenience, namely, that it would be unjust that the defendant should be subjected under these circumstances, first, to a suit by the plaintiff (his creditor) to pay the amount of the original indebtedness, and then compel him to bring another suit against his bank to have recredited to his account the amount of the check improperly charged against him. It is no defense to the claim of a cred-

itor, whose debt has not been paid, to assert that he must consider it as paid because otherwise the situation will cause trouble and embarrassment to his debtor. Moreover, although I am not clear that such embarrassment need really exist, I cannot see why the same argument .should not be applied if the maker of the check handed it directly to his creditor, the payee, and then some other person by fraud or accident secured the check and realized thereon by a fraudulent indorsement. The maker would certainly in that case suffer the same inconvenience, yet it is clear upon every precedent that he could not successfully plead payment of the debt.

[6] The same consideration prevents our regarding the mere receipting of defendant's bill as paid upon delivery by him of the check to the agent ás sufficient evidence that the check was received as payment. That conclusion certainly would not follow if the payment were made to, and the receipt given by, the principal himself, and no greater significance can attach to the same acts on the part of the agent. Thomson v. Bank, supra.

There remains, then, but one case which requires consideration, Burstein v. Sullivan, supra, 134 App. Div. 623, 119 N. Y. Supp. 317, in which the payee, under similar circumstances, was not permitted to recover from the maker the amount of the check which had been fraudulently indorsed, but was, in Burstein v. People's Trust Co., supra, 143 App. Div. 165, 127 N. Y. Supp. 1092, permitted to recover the proceeds as upon conversion from the bank that had paid the proceeds to the fraudulent indorser (a dishonest employé of the payee). It seems to me, although it is insisted in the latter case that the remarks to that effect in the opinion in the earlier case were obiter, that the first case proceeded on the assumption that the employé was authorized to do the payee's general business, and that his indorsement on the check was therefore substantially that of the payee. Indeed, in distinguishing the Bernheimer and the Dowdall Cases, supra, the opinion in Burstein v. Sullivan says:

"In neither was the agent who made the indorsement on the check a *general manager;*" and also "a payment to Melle [the employé] in cash would have been a payment to the plaintiffs, though he had stolen the money."

See, also, Cluett v. Couture, 140 App. Div. 830, 833, 125 N. Y. Supp. 813.

On the whole, therefore, I think that the case at bar has been properly decided in favor of plaintiff on the simple principle that the checks in controversy cannot be regarded as payment of the debt from the maker to the payee until or unless the checks have been paid to the payee, or one duly authorized, either expressly or impliedly, to receive the proceeds thereof on his behalf.

Judgment affirmed, with $25 costs.

GAVEGAN; J., concurs.

GUY, J. (concurring). I concur with Mr. Justice BIJUR in believing that the higher court could not have meant to lay down the general rule that a mere naked authority to collect or receive checks

carries with it power to indorse the principal's name on such checks and convert them into cash. In the case at bar there is no proof of general authority in Schrager as agent, and only an implied authority to receive checks. The rule that, if one of two innocent parties must suffer through the misconduct of another, it should be the one who reposed trust in him and thus empowered him to act, is not applicable. The defendant has parted with nothing. He is entitled to be paid, upon demand, the full amount deposited by him in bank, less all payments authorized by him. The payment of the check in controversy on a forged indorsement was not a payment authorized by defendant, who only authorized payment to the payee, or upon his genuine or authorized indorsement. He stands exactly where he did before. Plaintiff's rights cannot be affected by the bank's refusal to perform its obligation to defendant.