## FIDELITY & DEPOSIT CO. OF MARYLAND v. BANK OF CHARLESTON, NAT. BANKING ASS'N.

(Circuit Court of Appeals, Fourth Circuit. July 6, 1920.)

No. 1791.

1. **Banks and banking ☞140(2)—Payment of check on unauthorized indorsement is conversion of payee's property.**

A bank, which cashed a check on indorsement by its agent, with knowledge that the indorsement was unauthorized, and charged the check against the drawer's account, is liable to the payee of the check for conversion of his property, though it would not be liable to him in an action for breach of contract.

2. **Pleading ☞214(3)—Demurrer held to admit knowledge of agent's authority.**

A bank cannot rely upon the trust and confidence reposed for years by the payee of a check in its agent as a defense to payment of the check on the agent's indorsement, where it admitted by demurrer that it had knowledge that the agent was not authorized to indorse the check.

3. **Pleading ☞192(2)—Insufficiency as to details does not render complaint demurrable.**

An objection that the allegations of the complaint are not sufficient to inform defendant fully as to the transactions referred to therein does not support an order sustaining a demurrer to the complaint, though defendant would be entitled to have the complaint amended in those respects.

Rose, District Judge, dissenting.

In Error to the District Court of the United States for the Eastern District of South Carolina, at Charleston; Henry A. Middleton Smith, Judge.

Action by the Fidelity & Deposit Company of Maryland against the Bank of Charleston, National Banking Association. Judgment for defendant on sustaining demurrer to the complaint, and plaintiff brings error. Reversed.

This is a civil action, instituted in the District Court of the United States for the Eastern District of South Carolina, by the Fidelity & Deposit Company of Maryland against the Bank of Charleston, S. C., for damages, amounting to $5,000, with interest, for the conversion of a check. The facts as set forth in the complaint show:

That F. W. Wagener & Co. delivered to T. Moultrie Mordecai, as agent of the Deposit Company, a check on the bank for $5,000, payable to the order of the deposit company; the check being given as collateral security and in consideration of the deposit company becoming surety on a recognizance bond of one Keenan. That the said Mordecai, without the knowledge, permission, or consent of the deposit company, indorsed said check by indorsing thereon "Fidelity & Deposit Company of Maryland, by T. Moultrie Mordecai, Attorney in Fact," and presented the check to the bank for payment. That the check was paid, and the bank charged such payment to the account of, and returned it to, the drawer. That Mordecai was not authorized by the deposit company to indorse the check or collect the same, and payment to him by the bank was unwarranted, unauthorized, and without the knowledge or consent

of the plaintiff, and that the bank knew or should have known that it had no right to make such payment. That Mordecai did not pay over to the deposit company the money so collected, nor has it received the same from any other source.

These facts being set forth, the complaint then alleged that by reason of the above the bank had converted to its own use property of the plaintiff to the value of $5,000, which it refuses to deliver to plaintiff, to his damage, and prays judgment accordingly.

The defendant answered, and before trial served notice of oral demurrer to complaint, on the grounds that the complaint does not state facts sufficient to constitute a cause of action in that:

(a) There is and was no privity of contract between the plaintiff and defendant in regard to the alleged check referred to in the complaint.

(b) That the payee of a check has no right of action against the drawee, unless and until it accepts or certifies the same, which does not appear upon the face of the complaint to have been done in this case.

(c) That the duty and liability of the defendant bank, if any, by reason of the facts and circumstances alleged in the complaint, would be to F. W. Wagener & Co. only, and not to the plaintiff herein.

The demurrer was sustained, and the complaint dismissed, and the case comes here on writ of error.

J. N. Nathans, of Charleston, S. C., and Washington Bowie, Jr., of Baltimore, Md. (Nathans & Sinkler, of Charleston, S. C., on the brief), for plaintiff in error.

Frederick H. Horlbeck and Julian Mitchell, both of Charleston, S. C. (Mitchell & Smith, of Charleston, S. C., on the brief), for defendant in error.

Before PRITCHARD and WOODS, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge (after stating the facts as above). The plaintiff in error will be referred to as plaintiff, and the defendant in error as defendant; such being the relative positions the parties occupied in the court below.

The defendant, having filed a demurrer, thereby admitted all the allegations contained in the complaint, to wit, that Mordecai had no authority to indorse the check or collect the same; that the bank knew, or should have known, that it had no right to pay the check; that the bank came into possession of the check with that knowledge; that it charged Wagener's account with the same, and thereupon came into possession of the proceeds thereof, which were the property of the plaintiff, and it has not paid them over to the plaintiff, or any one authorized to receive the same, and refuses to do so; and that the bank turned over the check to the drawer.

[1] The vital question here is as to whether the conduct of the bank as respects the cashing of the check was such as to render it liable for conversion. Is it reasonable to contend that, where a bank cashes the check of another on the indorsement of a third party, who it knew was not authorized to make such indorsement, the bank should be exonerated on the ground that there was no privity between the payee of the check and the bank? Are the facts in this case, as alleged and admitted, in harmony with those of the decisions relied upon by counsel for defendant? In the case of First National Bank v. Whit-

man, 94 U. S. 343, 24 L. Ed. 229, it was held that the payee of a check, before it was accepted by the drawee, could not maintain an action against the bank on which it was drawn. The court, in that case, refers to the opinion of Mr. Justice Davis in the case of Bank of the Republic v. Millard, 10 Wall. 152, 19 L. Ed. 897, as leaving little to add upon this subject by way of illustration or authority. It also deals with the question of the acceptance of a check by a bank wherein it would be liable to the holder. There it appeared that the bank had made a weekly statement to the drawer of the check of deposits received and payments made, and had returned the check as having been paid. It also appears that the amount of the check was entered to the credit of the bank, and it was contended that this constituted in effect an application of the money of the drawer to the use of the holder of the check, thereby creating privity between the payee and the bank. In discussing this point, the court said:

"There is no suggestion in the evidence that either the bank or Mr. Spinner knew that the indorsement of the payee was unauthorized. The bank, we assume, would not knowingly subject itself to the dangers and liabilities resulting from making payment to one not authorized to receive it."

Thus it will be seen that that case is easily distinguishable from the case at bar. In this instance, as we have said, it is admitted by the demurrer that the bank knew the indorsement was unauthorized. Therefore, with full knowledge that Mordecai had no right to indorse the check, it subjected itself to all dangers and liabilities that might occur by making payment to one not authorized to receive it.

The case of Laclede Bank v. Schuler, 120 U. S. 511, 7 Sup. Ct. 644, 30 L. Ed. 704, affirms the doctrine announced in the Millard and Whitman Cases, supra. Mr. Chief Justice Fuller, in delivering the opinion of the court in the case of St. Louis & San Francisco Railway Co. v. Johnston, 133 U. S. 566, 10 Sup. Ct. 390, 33 L. Ed. 68, which bears on this point, said:

"It is settled law in this court that the holder of a bank check cannot sue the bank for refusing payment, in the absence of proof that it was accepted by the bank or charged against the drawer (Bank of The Republic v. Millard, 10 Wall. 152; First National Bank v. Whitman, 94 U. S. 343, 344; Laclede Bank v. Schuler, 120 U. S. 511, 514). * * *"

In the case of Thompson v. Sioux Falls National Bank, 150 U. S. 231, 14 Sup. Ct. 94, 37 L. Ed. 1063, it was alleged that the check had been issued by the bank (cashier's check) for value received, and duly indorsed, and that plaintiff had lawfully come into possession of it in due course of business. The defense in that instance was that the check had not come lawfully into possession of the plaintiff in the usual course of business, and that its acquisition was ultra vires. Mr. Justice Brown, who delivered the opinion of the court, said:

"We have not deemed it necessary to consider whether this check falls within the class upon which we have held that no action will lie in favor of the holder against the drawee before acceptance. Bank of Republic v. Millard, 10 Wall. 152; First Nat. Bank of Washington v. Whitman, 94 U. S. 343; Bull v. Bank v. Kasson, 123 N. Y. 105. In any view we have been able to take of this case, we think the question of plaintiff's title to the check

and its right to recover upon the same should have been left to the jury under proper instructions."

In the case of Fourth Street National Bank v. Yardley, 165 U. S. 634, 17 Sup. Ct. 439, 41 L. Ed. 855, the court upheld an equitable assignment of the amount of the check in question in favor of the drawee. There the question as to the right of the holder of a check against the bank was urged, and the previous decisions of the court were presented and argued. Mr. Justice White, in delivering the opinion of the court, commences with the citation of the previous decisions, beginning with the Millard Case.

When we come to consider the above authorities, we find that the Supreme Court of the United States has decided only that an action ex contractu on the check by payee against the bank before acceptance will not lie, but it did not decide that an action for conversion could not be maintained. On the contrary, as in the Millard and Johnston Cases, it is fair to infer that, if it had been shown the bank had charged this check on its books against the drawer, using that as a basis, plaintiff would be entitled to recover on a count for money had and received, and it should be remembered that in the Whitman Case it is equally reasonable to infer that an action would lie against the bank, if it appeared that the bank knew the indorsement was unauthorized. Therefore the real question presented in this case has not been directly passed upon in any decision of the Supreme Court.

In the case of Siegel v. Kovinsky, 93 Misc. Rep. 541, 157 N. Y. Supp. 340, the court recognizes the principle contended for by plaintiff in this instance. Among other things, the court in that case said (Syl. 3 and 4):

"In the absence of an indorsement of a check by one authorized thereto by him, the payee, on a wrongdoer's appropriation of the check, may recover from the maker as his debtor. In such case the payee may also recover from the bank upon which the check is drawn as for a conversion of the check, or of its proceeds, by the bank's payment to one other than the payee."

Also the case of Louisville & N. R. Co. v. Citizens' & People's Nat. Bank of Pensacola, 74 Fla. 385, 77 South. 104, L. R. A. 1918C, 610, sustains the contention of the plaintiff in this instance. In discussing this phase of the question the court said:

"The first count of the declaration may be considered as one in trover for the conversion of a check. The check was the property of the plaintiff; it was in the plaintiff's possession, for Weekly's possession was the plaintiff's possession; it was taken by the defendant, upon whom it was drawn, and the proceeds paid to a person who had no authority from the plaintiff to receive it; the account of the drawer was charged with the amount paid, and the check was returned to the drawer. * * * The transaction as set forth in the declaration would support a count for money had and received. The check was the bank's authority for paying to the plaintiff from the account of Virgin & Carter the amount of money named in the check. The drawer of the check had the necessary funds on deposit, and the bank was solvent. Therefore, when the bank took from the funds on hand, or from the funds of Virgin & Carter on deposit, the amount stated in the check, it had in its possession for that instant of time money which it should have paid to the plaintiff; but the bank took the responsibility of saying that a payment to Weekly was a payment to the plaintiff. * * * The defendant took up the check and

returned it to the drawer without authority from the owner to do so. This was an interference with plaintiff's property and constitutes a conversion, because, when the bank undertook to return the check to the maker, it exercised ownership over it. * * * This unauthorized act of ownership deprived the plaintiff of the use and possession of the check. Lord Ellenborough, C. J., said: 'It might be a hardship upon the defendant, but that by law a person is guilty of a conversion who intermeddles with my property and disposes of it; and it is no answer that he acted under authority of another who himself had no authority to dispose of it.' Stephens v. Elwall, 4 M. & S. 259. * * * The section in the Negotiable Instruments Law, providing that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and that the bank is not liable to the holder unless and until it accepts or certifies the check (section 3098, General Statutes), does not apply. The plaintiff is not suing the bank for breach of a contract in not paying the check. It is suing the bank, because the latter has undertaken to exercise ownership over a check which belonged to the plaintiff without its authority—because the bank had in its possession funds, the proceeds of the check, which it should have paid to the plaintiff, but negligently failed to do so."

In the case of Thomson v. Gortner, 73 Md. 474, 21 Atl. 371, the Supreme Court of that state, in discussing the question when trover will lie for the conversion of a promissory note or other negotiable instrument, said:

"It is well-settled law that trover will lie for the conversion of a promissory note or other negotiable instrument, as well as for any other article of personal property. Winner v. Penniman, 35 Md. 163; Brown et al. v. Bokee, Adm'r, 53 Md. 170."

In Kansas City Casualty Co. v. Westport Ave. Bank, 191 Mo. App. 287, 177 S. W. 1092, the court said:

"We concede that there was no privity of contract between the Inter-City Grocery Company and defendant, and hence no right to sue defendant upon a contract existed or was assigned to this plaintiff; and thus we fully recognize the soundness of that class of authority in which Grocer Co. v. Bank, supra, has placed the courts of this state. But the present action is not ex contractu; it is ex delicto. Defendant bank has not contracted to pay the Inter-City Grocery Company the amount of the checks in controversy, but it has wrongfully intermeddled with them to the exclusion and in disregard of the rights of the true owners, and that is a conversion. A conversion is 'any distinct act of dominion wrongfully exerted over one's property, in denial of his right, or inconsistent with it.' 2 Cooley on Torts, 859. * * * And the measure of damages is prima facie the face value of the paper converted. * * * The grocery company had a choice of remedies; one of them being for the wrong done by defendant. The suggestion is well disposed of in Salomon v. Bank, 59 N. Y. Supp. 407, in these words: 'A person or corporation who converts a promissory note or chec kto his or its own use is liable in damages for the conversion in an amount equal to the amount due on the promissory note or check [citing authorities]. This action is in no sense an action on contract. Undoubtedly, the plaintiffs had a right to sue the makers of the checks, respectively; but they have elected to avoid the burden of bringing 24 suits against the drawers of the checks, respectively, all but one of which suits would be against nonresidents of this state, and they have sued the defendant, and seek to recover as damages the amount of all the checks in one action. A person whose property has been wrongfully converted is not bound to take the same back. He may abandon it from the moment of its conversion, and sue for its value.' "

The cases of Graton, etc., v. Redelsheimer, 28 Wash. 370, 68 Pac. 879, Robinson v. Bank, 86 N. Y. 404, and Blum v. Whipple, 194 Mass.

253, 80 N. E. 501, 13 L. R. A. (N. S.) 211, 120 Am. St. Rep. 553, are very much in point, and sustain the contention of the plaintiff. The South Carolina courts recognize this principle. In the case of Fogarties & Stillman v. State Bank, 12 Rich. 518, 78 Am. Dec. 468, the Supreme Court of that state said:

"It is enough if it appears that ex æquo et bono, the plaintiffs are entitled, as between the parties to the suit, and to the instrument, to the money. If so, an action lies for money had and received to their use."

[2] It is contended by counsel for defendant that for a number of years Mr. Mordecai had built up a very large practice in the city of Charleston, and had appeared before this court in numbers of cases, and that until the crash came he enjoyed the confidence and acted as attorney and agent for many of the best people of this country, and that plaintiff never limited his authority until this particular case, and that it now seeks to visit upon the Bank of Charleston the consequences of a dereliction in duty of their own agent, who for many years enjoyed their fullest confidence.

This argument cannot avail the defendant. The fact that Mr. Mordecai at one time enjoyed the confidence of the plaintiff, as well as the defendant, under the pleadings of this case, is not material, and could not be considered on a demurrer. It may or may not avail the defendant as a defense to the action, but in no view of the case could we consider the same as having any material bearing upon the question now before us.

[3] It is insisted by counsel that the allegations of the complaint are not sufficient to fully inform defendant as to the transactions referred to therein. In response to this contention, it may be said that the defendant would be entitled under the rule to have the complaint amended as respects this point, if, when the case comes on for trial in the court below, defendant may be so advised.

In none of the cases relied upon by defendant does it appear that the bank at the time of the payment of the check, was aware of the fact that the indorsement was unauthorized. The facts as alleged in the complaint, we think, are sufficient to raise an issue involving the question as to whether the defendant is liable for conversion, which should be submitted to the jury.

For the reasons stated, we are of opinion that the court below erred in overruling the demurrer. The judgment of the lower court is therefore reversed.

ROSE, District Judge (dissenting). I think the difference between the courts as to the liability of a drawee of a check to the payee for an unauthorized payment upon it does not turn upon the form of action. The Supreme Court, as I understand it, holds that the drawee is not liable to the payee for a mispayment due to simple negligence, unmixed with any element of bad faith. If the allegation in the declaration that the bank knew it had no right to pay the check was unqualified, it would doubtless be good; but the plaintiff was not willing to undertake the burden of proving so much, and so, after the statement that the bank knew, it added "or should have known," and that may amount to nothing more than a charge of carelessness.