CEYLON McCOY, Appellant, *v.* WILLIAM BARCLAY, JR., and Others, Respondents, Impleaded with JULIA DEMETER and Others, Defendants.

Third Department, April 28, 1937.

*Fred J. Flanagan,* for the appellant.

*Curtin & Curtin* [*Murray Curtin* of counsel], for the respondent The West End Brewing Company.

BLISS, J. This action is brought to have canceled and discharged of record two mortgages, one held by Hermon J. Donavin, mortgagee, and the other by the West End Brewing Company, mortgagee. From a judgment denying such relief as to the mortgage of the West End Brewing Company, the plaintiff appeals. The mortgage held by the West End Brewing Company bears date July 3, 1915. At that time the defendant William Barclay, Jr., desired to purchase the real estate known as the Grove Hotel at Norfolk, St. Lawrence county. He went to the defendant Hermon J. Donavin of Ogdensburg, an attorney at law who represented the West End Brewing Company. Donavin obtained a $2,000 loan from the brewing company to Barclay, who gave the company a mortgage on the premises for this amount. All of the business was transacted at Donavin's office. A mortgage bearing the same date from Barclay to Donavin for $1,525 was later discovered to be of record. This

mortgage has been held to have been obtained by Donavin by fraud and without consideration, and has been canceled and discharged of record in this action. No appeal has been taken by the defendant Donavin.

From October 15, 1915, to August 3, 1916, Barclay made various payments on the brewing company mortgage by check drawn to the order of Donavin, which payments amounted in all to $800. Between these same dates the West End Brewing Company received and credited upon the mortgage two payments of $100 each. It is thus apparent that Donavin forwarded to it part but not all of the moneys paid to him on the mortgage by Barclay.

On June 20, 1916, the brewing company sent the bond and mortgage to Donavin for foreclosure with the statement that for some time past it had been informed that it would receive its money but that this had not materialized. Again on July 26, 1916, it wired to him to push the foreclosure relentlessly. About this time, although the exact date does not appear in the record, Donavin notified Barclay that the brewing company desired to have the mortgage paid up and suggested that he sell the property and pay up the mortgage. Shortly thereafter Barclay entered into negotiations with McCoy, telling him that the West End people had a $1,200 mortgage on the property, which they wanted to clear up. McCoy agreed to purchase the property for $1,200, just enough to pay the mortgage, and together he and Barclay went to Donavin's office and advised him of that fact. Donavin told them that he would have to clear the title and to return when the deed was ready. Later they again went to Donavin's office and the $1,200 was paid to him. On August 22, 1916, the brewing company wrote Donavin that in compliance with his telephone request of that day it was inclosing a petition for transfer of the Barclay liquor tax certificate and that the discharge of the real estate mortgage would go forward the next day as soon as it could get a certificate of the notary public attached to it. Donavin testified that he had previously told the president of the brewing company by telephone about the transaction and that the letter was his reply. Donavin also conceded that the $1,200 was paid to him by Barclay and claimed that he had settled with the brewing company. He likewise stated that he had satisfied the mortgage by direction of the brewing company.

Barclay and his wife, by warranty deed dated May 9, 1917, and acknowledged May 10, 1917, conveyed the premises to McCoy. This deed made no mention of any mortgage. McCoy continued in possession until 1930, and then, when he was about to sell the property, first learned that there were two unsatisfied mortgages against it, the one to Donavin and the other to the brewing com-

pany. Meanwhile no demand was made by the brewing company for further payment of the mortgage.

The plaintiff also showed that Donavin had acted as attorney at law for the respondent in other matters. The respondent offered no testimony, but rested upon the plaintiff's case. The trial court dismissed the complaint as to the defendant brewing company

It thus appears, from such facts as are not in dispute and by deduction of the natural inferences necessary to complete the picture that Donavin, an attorney at law, represented the respondent brewing company at all times with relation to the Barclay mortgage. When the mortgage was first given to it, he obtained the money from his client for loan to Barclay, and then completed the loan and execution and delivery of the papers. Thereafter he collected payments upon the mortgage and some of these moneys were forwarded to the mortgagee. He thus with the knowledge and consent of the respondent, continued to act as attorney in this matter after the mortgage had been recorded. It accepted the benefits of his acts in its behalf, when it accepted the money paid through him. Then he was given specific authority to foreclose the mortgage. If there was a question as to his right to receive payments on the mortgage before that time this was ample authority to act for the respondent with respect to the collection of the moneys then unpaid on the mortgage and the mortgagor was justified in relying upon such authority. " The authority of an attorney to receive the payment of a debt or claim which he is employed to recover by suit or to collect is well settled." (5 Am. Jur., Attorneys at Law, § 69. See, also, *Stratton* v. *Graham*, 164 App. Div. 348; 6 C. J. 664.)

The balance of the mortgage was paid to Donavin as attorney for the respondent. At the time of payment Donavin had in his possession the bond and mortgage. The mortgage was thus paid in full to the agent of the respondent. The respondent had knowledge of this fact for it sent to Donavin a satisfaction. It is difficult to perceive how there could have been a more definite ratification.

The judgment appealed from should be reversed and judgment granted to the appellant against the respondent West End Brewing Company according to the prayer of the complaint, with costs in all courts.

HILL, P. J., RHODES, MCNAMEE and HEFFERNAN, JJ., concur.

Judgment reversed on the law and facts, and judgment granted to the appellant against the respondent West End Brewing Company, according to the prayer of the complaint, with costs in all courts.