Jerome L. Steinberg, J.
This case comes on before me for a judicial decision based upon an agreed state of facts as follows:
“ Plaintiff commenced an action in this court against Tony’s Custom Collision for personal injuries allegedly suffered in February, 1966. He engaged one Ronald Hoffman, who at the time was a member of the Bar of this State to represent him. Subsequently Hoffman settled plaintiff’s action for $3,000. By letter dated January 6, 1967, said attorney Hoffman forwarded to defendant National Union Insurance Company, which insured Tony’s Custom Collision, a general release, purportedly signed by plaintiff, and requested the issuance of two checks, totalling the amount of the settlement, i.e., $165 payable to 1 The Employees Group ’ in satisfaction of their lien for disability payments, and the balance of $2,835 payable to ‘ Samuel Dobbins and Ron- *1088 aid Hoffman as attorney ’. According to arrangements between Dobbins and his attorney, plaintiff (Dobbins) was to receive $2,000 out of the settlement figure. In January, 1967 the defendant National Union Insurance Company [hereinafter referred, to as National Union] issued its draft number Q-C9221, dated January 6,1966 in the sum of $2,835 payable through third-party defendant Mellon National Bank and Trust Co., also known as Pittsburgh National Bank and Trust Co., [hereinafter referred to as Mellon]. The said check was made payable to the order of ‘ Saul Dobbins and Ronald Hoffman, Esq., as attorney ’. The check which was forwarded to, and received, by attorney Hoffman was erroneously dated, since the year should have been 1967 instead of 1966.
“ There appears on the back of said draft purported indorsements in the following order: ‘ Saul Dobbins ’, ‘ Sam Dobbins ’, ‘ Ronald Hoffman, Esq. ’, ‘ Anthony Rocco, 4906 Church Ave., Brooklyn ’ and ‘ Manufacturers Hanover Trust Company ’ [hereinafter referred to as Manufacturers]. All of said indorsements were genuine with the exception of ‘ Saul Dobbins ’ and ‘ Sam Dobbins ’. [Saul Dobbins and Sam Dobbins are one and the same person.]
‘ ‘ At the time third-party defendant Rocco indorsed said draft, there appeared the prior indorsements of ‘ Saul Dobbins, ’ ‘ Sam Dobbins ’ and ‘ Ronald Hoffman, Esq. ’ Rocco presented the draft to the third-party defendant Manufacturers and was paid the full amount of the draft by said bank.
“ Manufacturers indorsed said draft and subsequently, through normal banking channels, the draft was presented to third-party defendant Mellon in January, 1967. Manufacturers was paid the full amount of the draft by Mellon.
“In February, 1967 the draft was forwarded by Mellon to the drawer, the defendant National Union, together with a statement of account which covered said draft as well as other items.
“ The signatures of ‘ Saul Dobbins ’ and ‘ Sam Dobbins ’ on said draft and on the release were forgeries.
“ Defendant National Union did not give third-party defendant Mellon notice of any claim of forged indorsements on said draft until the service of the supplemental summons and third party amended complaint in this action, on or about February 18,1971.”
Although not included in said stipulated facts, it also appears that the forgeries in question were made or procured by plaintiff’s attorney Ronald Hoffman, who retained the proceeds of the draft for his own benefit.
*1089 Fortunately, cases of this type are extremely rare. Unhappily, however, this results in a dearth of judicial precedent in this area. Because of this paucity of precedent, this court will delve 'into the matter in greater depth than it would ordinarily be inclined to do, in an effort to establish some definable precedents. It is hoped that the parties adversely affected by this decision will avail themselves of their rights to appellate review, so that a more weighty precedent may be established, with a view towards uniformity in all jurisdictions of this State.
Before attacking the nebulous areas, we will dispose of those questions which are most easily resolved:
first : There is no doubt that Hoffman, the erstwhile attorney, is liable not only to plaintiff, but to any other party to this action who might be held accountable to plaintiff; provided, of course, said party proceeded against him. This might well be an exercise in futility, but that is not our concern at this time.
second: Mellon is not liable to anyone and the complaint against it is dismissed. As the payor of the check, Mellon would not be liable to any prior indorsers. As to National Union, the issuer of the check, subdivision (4) of section A-406 of the Uniform Commercial Code specifically precludes recovery from payor bank after three years.
third : Neither defendants Boceo nor Manufacturers Hanover is liable to either plaintiff dr third-party plaintiff because of their laches in notifying them of the forgery (Uniform Commercial Code, § 4-207, subd. [4]). The original draft was issued in January, 1967. Plaintiff first commenced suit in January, 1969. The first notice to these defendants of a claim against them was in January, 1972. In the opinion of this court a three-year delay after knowledge of the forgery is not a reasonable time. It may be argued that plaintiff, conceivably, did not know of the involvement of either of these defendants until some later date even though the defendant third-party plaintiff (National Union) could easily have ascertained that fact by reviewing the canceled check which was in its possession. However, if plaintiff intended to proceed against parties other than the drawer, he has the obligation of making reasonable efforts to ascertain their identities. This could have been done by way of examination before trial of defendant or discovery and inspection of the check. The first time plaintiff made claim against the other parties was also in 1972, after a mistrial of this action was declared by another Judge. This then leaves us with the original parties.
*1090 The general rule of negotiable instruments is that a forged check does not discharge the debt between the drawer and the payee. Thus plaintiff would be entitled to recover against the defendant unless some exception to that rule can be found by reason of the attorney-client relationship then existing between plaintiff and forger. It has been held that an attorney has implied authority to receive payment of a debt which he is retained to collect, and when such payment is made to the attorney, the debtor is discharged, notwithstanding the defalcation of the attorney. (McCoy v. Barclay, 250 App. Div. 682; Brownstein v. Aluminum Reserve Corp., 245 F. 2d 82.) However, it has also been held that an attorney has no implied authority, unless necessary to effectuate the object of his agency, to indorse his client’s name and collect a check given him in payment of his client’s claim. (Jennings v. President & Directors of Manhattan Co., 203 App. Div. 802.) In Porges v. United States Mtge. & Trust Co. (203 N. Y. 181,189) the Court of Appeals held that “ The express authority to receive negotiable paper does not imply the power to indorse it.”
In Berlowitz v. Horowitz (250 App. Div. 728), an attorney had received, in connection with a negligence action, a settlement check payable to himself and his client. He forged his client’s signature to the check and appropriated the proceeds to his own use. In that wrongful death action the plaintiff did sign a release pursuant to an order of the Surrogate’s Court approving the settlement. The Appellate Division held in part as follows: ‘ ‘ While the defendant, by drawing the check to the order of the attorney as well as the administrator, did so in good faith, he unintentionally assisted the attorney to violate his duty in appropriating the money to his own use, and the responsibility must fall on defendant. (Honadle v. Stafford, 265 N. Y. 354.) ” Conceivably it might be argued that both the Berlowitz and Honadle cases are distinguishable in that both cases involved payment pursuant to court order. Nevertheless, under the authority of the Jennings and Porges cases (supra) this court is of the opinion that an attorney does not ordinarily have implied authority to sign his client’s name on a settlement draft which is made payable to his client and himself as attorney.
This court is cognizant of a recent decision in New York City Civil Court (Moss v. Standard Brands, 68 Misc 2d 625) which held that an attorney has the implied authority to indorse his client’s name to a settlement draft, and that the insurance company is not liable to plaintiff for his attorney’s forgery and misappropriation of funds. While recognizing the desirability of *1091 uniformity in all jurisdictions, we cannot concur with the conclusion reached by our colleague in this instance. It must be recognized that in none of the cases cited in the Moss case, nor in any case referred to by the defendant, was the check in question a two-party check. Had the check in this case been issued to “ Ronald Hoffman, as attorney for Dobbins ” perhaps this court might rule otherwise.
The defendant herein relies heavily on the general rule that an attorney has authority to receive payment of a debt or claim which he is employed to collect, citing McCoy case (250 App. Div. 682, supra) which involved an action to cancel and discharge a mortgage of record. In that case the attorney, over a period of time, collected the mortgage payments and forwarded same to the mortgagee. The mortgagee accepted the benefits of the attorney’s acts in its behalf and accepted the money paid through him. He was given specific authority to foreclose the mortgage. The balance of the mortgage was paid to the attorney who at the time had possession of the bond and mortgage. The mortgagee had knowledge of this fact and sent the attorney a satisfaction. The court held that this was certainly a ratification. In its decision, the court said (p. 684): “ The authority of an attorney to receive the payment of a debt or claim which he is employed to recover * * * is well settled.” (citing Stratton v. Graham, 164 App. Div. 348). It is interesting to note that in the Stratton case, the court stated (p. 350): “ While an attorney has general authority to receive tender of payment of a claim or suit, it is evident that special circumstances may exist which limit this agency.” The court found that special circumstances did exist in that case, which involved an action for money paid, on the issue as to whether proper tender had been made.
In further support of their position, defendants cite Kramer v. Grant (60 Misc. 109) where the court held that an attorney employed to collect a debt had the authority to receive check for paymént of same; Conner v. Watson (27 Misc. 444) where the court held that, in a partition action, plaintiff’s attorney had the authority to receive payment although he never turned the proceeds over to his client; and the Brownstein case (245 F. 2d 82, 84, supra) where the court held: Generally “payment to an attorney of a claim which he is employed to recover or collect operates as payment to the client himself, absent specific contrary arrangement.” (italics supplied). The defendants also cite Hawkins v. Avery (32 Barb. 551) which does not support their position. There, the court held that an attorney, after collecting a claim, has no authority to disburse the proceeds, as he *1092 saw fit, amongst those interested. (See 7 O. J. S., Attorney and Client, § 104, p. 928 for decisions in other jurisdictions.)
The cases cited by defendants are distinguishable and not controlling herein. They involve questions of authority to receive payment or tender. The issue herein is more definitive. The defendant, in making payment, chose not to rely on any authority of plaintiff’s attorney. It did not make payment to plaintiff’s attorney, but instead, in making its settlement draft payable both to the plaintiff and to Hoffman, as attorney, it chose to make payment to them jointly. By its own conduct, in so issuing its settlement draft, it made requisite the signature of both payee parties in order to negotiate the instrument.
To hold otherwise would necessarily entail a finding that the defendant was performing an extra and useless act when it inserted both names as payees on its draft. The court will not adopt such a construction. It is more reasonable to conclude that defendant intended primarily to make payment to plaintiff, and that it inserted Hoffman’s name as attorney on the draft in order to protect itself from a possible claim by the attorney, based upon his lien on the proceeds.
It is axiomatic that parties are bound by the customs of their trade or profession. This is no less true of the legal profession than of any other. The custom is well established that, in negligence cases, settlement drafts are made payable both to claimants and their attorneys, in order to protect the rights of both. To allow defendant to avoid its obligation to plaintiff by reason of the forgery of plaintiff’s attorney would be to abrogate this long-standing custom. The ramification of such precedent could be more than we care to contemplate. Two-party checks are in widespread use. To invalidate the restrictions inherent in such instruments would serve to remove a valuable tool from our commercial society and might create far more problems than it solves. Cases of outright forgery are rare, especially among attorneys. There are certainly more instances of an attorney “using funds entrusted to his care” intending to replace them at some undetermined future date. All transactions involving commercial paper contain some small element of risk. If these transactions are to remain feasible, the risks must be minimized and the consequences of such risks laid at the door of the party best equipped to handle them.
It is the feeling of this court that the risks of misappropriation of the proceeds of multiple-party checks will be most effectively curtailed by preserving the intention of the parties and requiring that all parties named affix their signatures thereto. As to *1093 the risk of loss, this would ordinarily be borne by the bank, whose very reason for existence is the dealing in such instruments. In this case, that will not be so; but this is due solely to the negligence of the defendant insurance company in failing to give the bank timely notice of the forgery.
As to the measure of damages, the court finds it somewhat incredible that a client, who was purportedly unaware of the very existence of a settlement for two years, should have come to the specific arrangement of $2,000 as his share of the distribution of the proceeds; particularly when the original retainer agreement was in the usual sliding scale form customarily employed in this jurisdiction. Nevertheless we will not go beyond the stipulated statement of facts and, therefore, render judgment in favor of the plaintiff against the defendant National Union Insurance Company in the sum of $2,000. All other actions and third-party actions are dismissed, except the third-party action by National Union Insurance Co. against Ronald Hoffman; and as to that action, the court renders judgment against third-party defendant Hoffman in the like sum of $2,000.