Joseph A. Martinis, J.
Plaintiff, Chatham Securities Corporation (hereinafter called “Chatham”), sues J. R. Williston & Beane (hereinafter called “ Williston ”) on a check made by Williston to the order of Meadow Brook National Bank (hereinafter called “Bank”). This check was assigned to Chatham by the Bank after payment thereof was ordered stopped by Williston.
*818 Williston, a stock brokerage firm, prior to the dates herein concerned, had accepted a brokerage account from Arlee Associates, Inc. (hereinafter called “Arlee”). Chatham is in the business of financing stock clearance transactions, and the Bank, pursuant to agreement with Chatham, acted as Chatham’s agent in such transactions. In a stock clearance transaction the purchaser of stock orders it from a broker with the hope of making a profit on its sale on a short term. According to market custom the settlement date (the date for payment of the stock ordered) is four to five days after the date of purchase. The finance company, in such a transaction, would advance all or part of the price of the stock, the purchaser would then sell the stock, hopefully at a profit, to a third party on or before the settlement date, and the purchaser’s profit would be the difference between the purchase price and the sales price, less the finance company’s fees. The purchaser commonly orders the delivery of the stock purchased by him from the seller’s broker to the finance company, as the purchaser’s agent, upon payment by the finance company of the amount due the seller. The finance company, in turn, then delivers the stock to the purchaser’s broker or agent to whom the stock is being sold by the original purchaser against payment by that party’s broker of the new sales price. First Discount Corporation (hereinafter called “Discount”) is also a finance company which had an account with Williston but that account was for the sole purpose of dealing in government securities. Arlee is a corporation formed by the principals of Discount for trading purposes on their own account, for Discount does not engage in such trading on its own account but only in financing transactions. Arlee’s account with Williston was a relatively active one, and it is clear from the evidence adduced, Williston had not dealt with or heard of Chatham until the commencement of this action.
On May 19, 1961, Williston received instructions from Arlee to sell certain securities for Arlee’s account, which securities were to be delivered to Williston by the Bank. Upon receipt of the securities in negotiable form, Williston was instructed, by Arlee, to issue its check for the amount of $53,198.75 for Arlee’s account. The proceeds from the sale amounted to $54,121.74 which amount was to be credited to Arlee upon delivery of the securities by Williston to the agent or broker of the party purchasing them from Arlee and upon receipt by Williston of the purchase price. The settlement date for the sale was May 25,1961. On May 26,1961 pursuant to Chatham’s instructions, the Bank’s representative presented the securities *819 to Williston and Williston delivered its check to the Bank’s representative for Arlee’s account. The following day, Friday, May 27, certain principals of Williston received information that certain checks given Williston by Arlee in prior transactions, in an amount far greater than that of the check given the Bank in the May 26 transaction, would be dishonored when presented for payment. The securities involved in the prior transaction had already been delivered to Arlee by Williston. The next business day (Monday, May 29) Williston had its check, which had been delivered to the Bank’s representative for Arlee’s account, stopped. After payment of the check was refused by the Bank upon which Williston had drawn it, the check was returned to the Bank and that Bank, in turn, delivered it ,to plaintiff who thereupon instituted this action. It now appears that the May 26 transaction involved plaintiff, although not to defendant’s knowledge. The evidence adduced establishes that plaintiff, Chatham, had been requested by Discount to handle a transaction for Arlee. Both Arlee and Discount had entered into agreements with Chatham authorizing Chatham, in transactions in which Chatham financed purchases for them, to receive and deliver securities for clearance on their behalf to brokers designated by them for a stipulated fee. On May 19, Discount called and requested Chatham to handle the clearance transaction for its client, Arlee. Thereupon Chatham called and requested the Bank with which Chatham dealt in these matters to handle the clearance transaction for it. This involved obtaining delivery of the securities from the seller’s broker, and, upon receipt of the securities in proper, negotiable form, payment, by the Bank’s check, of the amount concerned ($53,000). Thereupon the Bank was to deliver the securities to Williston upon receipt of Williston’s check in the amount of $53,198.75. This amount represented the $53,000 original price of the stock increased by Chatham’s fee for handling the transaction. These events occurred as described save for the additional fact that Williston stopped its check when apprised of the facts concerning Arlee’s probable nonpayment of its other checks. The Bank, it therefore appears, was selected to act by Chatham, unknown to Williston.
This action is, in essence, a contest between two creditors of a now insolvent debtor (both First Discount and Arlee now being insolvent) and the problem posed is, which shall bear the loss. Chatham is not a holder in due course of Williston’s check, for the check was given, and made payable to Meadow-brook Bank, which Bank, in turn, credited Chatham with the amount thereof and then gave its check to Arlee. Chatham is *820 only the assignee of the check, pursuant to an assignment which took effect only after payment thereof had been stopped and with knowledge of that fact. (Negotiable Instruments Law, § 91, subds. 2, 4.) In addition, the check was assigned to Chatham without indorsement. Accordingly Chatham’s claim is subject to Williston’s defenses, offsets or counterclaims against the original parties to the transaction (Negotiable Instruments Law, § 79; Goshen Nat. Bank v. Bingham, 118 N. Y. 349; Manufacturers' Commercial Co. v. Blitz, 131 App. Div. 17).
It thus becomes necessary to determine the status of the Bank and Williston vis-a-vis each other. It is clear that the Bank was known to be and was in fact at all times acting solely as an agent. Chatham contends that the Bank was its agent and acting as such. Williston contends that both the Bank and Chatham were acting as Arlee’s agents. Several facts, relevant in this determination, are undisputed or clearly established by the evidence. Chatham received a fee from Arlee for its services in the clearance transactions which fee was set forth in the written agreement between Chatham and Arlee. Williston was unaware of Chatham’s existence at the time of the transactions concerned, and believed it was dealing with Arlee as principal through the Bank as Arlee’s agent. The account maintained with Williston, the instructions received by Williston, the various documents concerned including confirmation and delivery tickets, receipts and notations on the check given by Williston, all evidence that Williston was under the impression that the transaction was for Arlee’s account. It is also clear that throughout the Bank was acting pursuant to Chatham’s instructions. However the Bank was aware that Arlee was interested in, and in all probability, the party ultimately responsible for, and benefitting or suffering by the transaction, for the Bank’s check had been issued to Arlee, although it thereupon charged Chatham’s account therewith. Accordingly, it appears for the purposes of this suit the Bank was acting either as Arlee’s agent (in which case Williston could clearly set off other debts of Arlee against credits due Arlee) or the subagent of Arlee, designated by Arlee’s prime agent, Chatham, in which event the same result would follow.
Chatham’s argument that it was a secured creditor by virtue of its agreement with Arlee, and, thus, may not be deprived of its security (the stocks) until payment of the debt secured is unavailing. The agreement between Arlee and Chatham provides that Chatham is indemnified by Arlee against all and any losses sustained by Chatham in handling clearance trans *821 actions for Arlee. It further grants to Chatham, upon such a loss occurring, a right to sell any of Arlee’s securities in Chatham’s possession to indemnify itself. However, at the time of the transaction here concerned Chatham had not yet sustained any such loss. The loss followed the transaction and occurred subsequent to the delivery of the securities to Williston. Accordingly this alleged “ pledgee’s lien” did not arise until after Williston’s check’s payment was stopped and the check returned to Chatham by the Bank. At this time Chatham held no securities belonging to Arlee. Further, before the claimed lien could arise under the agreement the loss had to be incurred in transactions handled for Arlee’s account. However, if this transaction were for Arlee’s account, Williston could set off its claim against Arlee herein. In any event, the delivery of the securities to Williston in negotiable form would operate to extinguish any security interest of Chatham therein (Mason v. Public Nat. Bank & Trust Co., 262 App. Div. 249, affd. 287 N. Y. 809).
Clearly the acceptance by Williston of the worthless checks of Arlee in the prior transaction did not operate as a payment of the debts then due. Acceptance of a check, in the absence of extraordinary circumstances evidencing a contrary intent, does not operate as payment, but as conditional payment only so that if the check is paid, the debt is discharged. But if it is not paid the debt survives (Reitz v. Krystofowicz, 166 Misc. 814; Siegel v. Kovinsky, 93 Misc. 541). Chatham’s contention that Williston was indebted to Arlee when the transactions were instituted is refuted by the evidence. Williston’s bookkeeping entries which indicate a credit balance on Arlee’s side were demonstrated to be bookkeeping devices only and not representative of any actual debt. Chatham was a collecting agent and factor for Arlee, and as such, the setoff by Williston of Arlee’s debt to it, as a setoff of a debt due from Chatham’s principal was properly pleaded, and convincingly established on the trial (see Bank of America v. Waydell, 187 N. Y. 115; Tokohoma Specie Bank of Milbert Importing Co., 182 Misc. 281).
In conclusion, Chatham acted as a factor and collecting agent and was paid for so acting. If it now must accept the risk inherent in that position by reason of the insolvency of the party to whom it advanced credit, it may not be heard to complain. Judgment for defendant.