■ CHRISTINA HUTZLER, as Administratrix of the Estate of MICHAEL E. HUTZLER, Deceased, Respondent, v Hertz Corporation, Appellant, et al., Defendant.—In an action to recover $10,929, representing the amount of a settlement check drawn to the order of plaintiff and her former attorney, on which plaintiff's indorsement was allegedly forged, and the proceeds of which were converted by the said attorney, defendant The Hertz Corporation appeals, as limited by its brief, (1) from so much of an order of the Supreme Court, Queens County, dated June 20, 1974, as (a) granted plaintiff's motion for summary judgment against it and (b) denied that branch of a cross motion which sought summary judgment in favor of said defendant and (2) from so much of a judgment of the same court, entered June 21, 1974 upon said order, as is against it. Judgment and order modified, on the law, by adding to each of them a provision that the amount of plaintiff's recovery against defendant The Hertz Corporation be reduced by the amount of the lien that attorney Yudow, had he not engaged in misconduct with respect to the settlement check, and not converted the proceeds thereof, would have been entitled to for professional services. As so modified, judgment and order affirmed insofar as appealed from, without costs, and case remitted to Special Term to fix the net amount of plaintiff's

recovery and for the entry of an amended judgment accordingly, with interest on the said net amount from December 11, 1970. An action by plaintiff for the wrongful death of her husband was settled when, on November 23, 1970, she executed a general release which her former attorney, Daniel Yudow, forwarded to defendant Hertz. He received in return the subject settlement check, dated December 11, 1970, in the amount of $10,929, which was payable to plaintiff, individually and as administratrix, and to Yudow. Yudow converted the proceeds of the check by forging plaintiff's indorsement thereon and depositing it into his bank account. Plaintiff's subsequent efforts to locate him were unsuccessful until June, 1973, although she had learned that he had been disbarred. This action to recover the amount of the settlement check, with interest thereon from December 11, 1970, ensued. In our opinion, the grant of summary judgment to plaintiff against Hertz was correct *(Berlowitz v Horowitz,* 250 App Div 728; *Dobbins v National Union Ins. Co.,* 70 Misc 2d 1087, affd 79 Misc 2d 241). We are not persuaded by Hertz' argument that *Berlowitz (supra)* should be overruled. The procedure followed by Hertz was largely for its convenience and in its interest. However, the replacement of the settlement check paid out by Hertz but never received by plaintiff must be subject to deduction for the attorney fees that plaintiff would have had to pay Yudow had there been no misconduct by him *(Berlowitz v Horowitz, supra).* This does not result in a windfall to Hertz. Having already paid the full amount of the settlement, including the amount which plaintiff would have had to pay Yudow had there been no misconduct, Hertz is merely obtaining a reduction of its loss by the amount to which plaintiff's interest in the settlement would have been reduced. The verified complaint and plaintiff's motion papers specifically ask for interest from December 11, 1970, the date of the settlement check. Plaintiff has been deprived of her moneys from approximately that time and the awarding of interest from that date was proper (see *Berlowitz v Horowitz, supra).* Cohalan, Acting P. J., Christ and Brennan, JJ., concur; Munder and Shapiro, JJ., dissent and vote to reverse the order and judgment insofar as appealed from, deny plaintiff's motion for summary judgment and grant Hertz' cross motion for summary judgment, with the following memorandum: We would deny plaintiff summary judgment against defendant The Hertz Corporation, and are of the view that, insofar as *Berlowitz v Horowitz* (250 App Div 728) is to the contrary, it should not be followed. Further, we would grant Hertz' cross motion for summary judgment in its entirety. The facts are not in dispute and essentially are as stated by the majority. In our opinion, those facts compel the legal result above indicated. The general rule is that payment to an attorney of a claim which he is employed to recover or collect operates as payment to the client himself, absent specific contrary arrangements *(Brownstein v Aluminum Reserve Corp.,* 245 F2d 82, 84). In other words, the attorney has authority (as his client's agent) to receive payment of the claim he is employed to recover (3 NY Jur, Attorney and Client, § 37). This court specifically recognizes this in our former rule 691.4 (former 22 NYCRR [d][1]), which states in pertinent part that "(1) Whenever an attorney, who has accepted a retainer or entered into an agreement as above referred to, shall collect any sum of money upon any such action, claim or proceeding, either by way of settlement or after a trial or hearing, he shall forthwith deposit the same in a bank or trust company in a special account separate from his own personal account, and shall not commingle the same with his own funds." In this case, there were no specific arrangements or any other facts to put Hertz on notice that plaintiff's attorney was not authorized to

receive the settlement check on plaintiff's behalf. There is no evidence in the record of any compromise order which might have directed that payment be made only to plaintiff. Similarly there is nothing in the record to indicate to the insurance carrier that her attorney was not acting in her best interest (see, e.g., *Tormo v Yormark,* — F Supp — [US Dist Ct, NJ, dec May 2, 1974]) or that appellant in any way facilitated the misappropriation by plaintiff's attorney (see, e.g., *Honadle v Stafford,* 265 NY 354). *Honadle v Stafford (supra),* the only authority cited in *Berlowitz (supra),* is clearly distinguishable. There, the attorneys for the defendant indorsed the check which had been issued and given to the plaintiff's attorney, delivered it to a bank, obtained the cash, and then handed the cash to the latter attorney, who converted it to his own use. There was no such accommodation by defendant here. Even more important, in *Honadle* the plaintiff was an infant for whom a guardian ad litem had been appointed, yet the check was made out to the attorney and the cash handed to him alone. The court in *Honadle* emphasized that the general rules of agency were not applicable to the guardian's conduct and that persons dealing with him were bound at their peril to learn the extent of his authority. Unauthorized agreements or arrangements made by a guardian obviously do not bind the infant, for "Infants are wards of the court and subject to its care" *(Honadle v Stafford, supra,* p 357). Here, Hertz, consonant with common practice and usage, made the check payable to plaintiff individually and as administratrix *and* to her attorney. It had no reason to believe that the attorney would act illegally and unprofessionally. The risk of an attorney turning out to be a thief must rest, however unfortunately, upon his client and not upon an innocent third party who acted in good faith (see *Moss v Standard Brands,* 68 Misc 2d 625). This is especially so when, as here, the client admittedly signed a general release and then took more than three years to learn that her attorney had absconded with the proceeds of settlement.