Jasen, J.
In this action against defendant tort-feasor arising out of the compromise of a personal injury and wrongful death claim made with the tort-feasor by plaintiff’s attorney with the consent of the plaintiff, we are asked to decide whether defendant tort-feasor was discharged from liability where its settlement draft, naming plaintiff and her attorney as payees, was negotiated by the attorney on plaintiffs forged indorsement and the proceeds of the draft appropriated. For the reasons which follow, we hold that the tort-feasor’s liability was discharged upon payment of the settlement draft by the drawee bank, the forgery notwithstanding, and that the claimant may not thereafter recover against the tort-feasor.
The parties are in agreement as to the basic facts. On June 1, 1966, Christina Hutzler was granted limited letters of administration by the Surrogate of Queens County on the estate of her husband who had perished on October 4, 1965, in an automobile accident. Through her attorney, Daniel D. Yudow, she commenced an action against Hertz Corporation to recover damages for the personal injuries and wrongful death of her husband. After some time Yudow succeeded in settling the action with Hertz and on November 23, 1970, in consideration of that settlement, Mrs. Hutzler, after obtaining permission of the Surrogate’s Court to compromise the action, executed a general release in Hertz’ favor. On December 11, 1970, Hertz issued and mailed to Yudow two checks totaling $11,500, the amount of the settlement, both of which were drawn on the Manufacturers Hanover Trust Company. One of these, with which we are not cocerned, was in the sum of $571, made payable to "The State Ins. Fund c/o Daniel D. Yudow”. The second check was for $10,929, the balance of the *212 settlement, and was payable to "Christina Hutzler Individually And As Administratrix of the Estate of Michael E. Hutzler and Daniel D. Yudow as Attorney.” On December 14, 1970, Yudow, having indorsed this check with his own signature and with the forged signature of Mrs. Hutzler, deposited it in an account in his name at Manufacturers Hanover. Four months later, in April, 1971, he closed the account. In the meantime Mrs. Hutzler attempted to obtain her share of the proceeds of the settlement, but was unsuccessful in locating Yudow until June, 1973. In the interim she learned that he had closed his office and was no longer in practice.[1] Thereafter she retained her present counsel who made oral and written demand for payment on Hertz in June, 1973. Hertz produced a copy of its settlement draft and refused payment. Upon examination of the indorsements, the forgery was at once apparent to Mrs. Hutzler, and both Hertz and Manufacturers Hanover were immediately apprised of this fact. Since no satisfactory resolution could be made, Mrs. Hutzler a short time later commenced this action against Hertz and Manufacturers Hanover to recover the amount of the settlement check. She alleged one cause of action against Hertz for negligence in not comparing the forged signature with her signature on the settlement agreement, and two causes of action against Manufacturers Hanover, one for conversion of the check and its proceeds and the other for breach of warranty.
On cross motions for summary judgment, Special Term granted Mrs. Hutzler judgment against Hertz for the amount of the check, and denied Hertz’ motion for summary judgment. Summary judgment was also granted to the defendant bank on which the check was drawn, but no appeal was taken by the plaintiff from this part of the judgment and order. On Hertz’ appeal, a divided Appellate Division modified the judgment and order "by adding to each of them a provision that the amount of plaintiffs recovery against defendant The Hertz Corporation be reduced by the amount of the lien that attorney Yudow, had he not engaged in misconduct with respect to the settlement check, and not converted the proceeds thereof, would have been entitled to for professional services”, and remitted the case for a determination of the amount of that *213 lien. (47 AD2d 839.) Special Term thereupon determined the amount of the lien, and amended its earlier judgment accordingly. Hertz now appeals directly, as of right, from this amended judgment, bringing up for review with it the prior nonfinal order of the Appellate Division. (CPLR 5601, subd [d].) Mrs. Hutzler cross-appeals, also as of right (CPLR 5601, subd [a], par [iii]), claiming that the Appellate Division erred in reducing the amount of her judgment by the amount of her former attorney’s lein for services rendered.
At the outset, we note that the courts of other jurisdictions have divided on the question now before us and it seems as though no majority rule can be stated. (See, generally, Ann., Forgery by Debtor’s Agent—Discharge, 49 ALR3d 843, 846.) Indeed, the cases of this State have been characterized as representing in microcosm this division of authority, with no definitive statement of our rule possible. (49 ALR3d, at pp 847, 859.)
As we view this case, we are concerned with two separate sets of legal relationships. The first involves a plaintiff and a tort-feasor, and the tort-feasor’s payment to the plaintiff’s attorney in settlement of the tort action. Reference must be made to principles of agency law in analyzing the rights and duties which arise from this set of relationships. The second concerns the relationships created when payment is made by a negotiable instrument. The rights and duties growing out of this set of relationships evolve from the law of negotiable instruments embodied principally in the Uniform Commercial Code. Only by keeping in mind that we are dealing with two separate bodies of law can we properly resolve this controversy.
We start with agency considerations. An attorney retained to collect a debt, or as here, to recover damages for personal injuries and wrongful death, normally also has at least apparent authority to receive payment from the debtor or tortfeasor once a settlement has been reached or a judgment entered. (McCoy v Barclay, 250 App Div 682, 684; Moss v Standard Brands, 68 Misc 2d 625, 627; 2 Mechem, Agency [2d ed], § 2180, p 1762.) This is clearly the rule, at least where payment is in cash. (See 7 Am Jur 2d, Attorneys at Law, § 102; 7 CJS, Attorney and Client, § 106, subd c.) Having made such a payment to the creditor’s or claimant’s attorney, the debtor or tort-feasor can be assured that he has been discharged from liability. If the attorney absconds with the cash *214 without paying it over to his client, the client may not thereafter compel the debtor or tort-feasor to pay a second time. (See Morrison v Chapman, 155 App Div 509, 514; Burstein v Sullivan, 134 App Div 623, 625.) He must instead look to the defalcating attorney.
An analogous situation develops where payment is made to the attorney for a claimant by means of a check made payable solely to the attorney. Payment by check, sometimes referred to as "conditional payment”, is not, by itself, payment of the underlying obligation. (Chatham Securities Corp. v Williston & Beane, 41 Misc 2d 817, 821, affd 22 AD2d 260, affd without opn 16 NY2d 1016; Mansion Carpets v Marinoff, 24 AD2d 947; Uniform Commercial Code, § 3-802, official comment 3.) Only when the drawee bank pays on the check is payment actually effected. Thus, once the drawee bank has paid on the check the debtor or tort-feasor is discharged from the underlying obligation as fully as though he had paid the attorney cash. As where payment is in cash, if the agent appropriates the proceeds of a check for himself, the claimant may not seek repayment from the debtor or tort-feasor.
The situation becomes somewhat more complicated where the check is made payable only to the creditor or claimant, or, as here, to the claimant and attorney jointly. It is at this juncture that the agency principles just described and certain principles of the law of negotiable instruments would seem to come into confict. Indeed, Mrs. Hutzler argues that the forged indorsement by Yudow was "wholly inoperative as that of the person [Mrs. Hutzler] whose name is signed” (Uniform Commercial Code, § 3-404, subd [1]) and that Hertz’ liability was therefore not discharged by its settlement draft. This argument, if accepted, would require Hertz to pay a second time.
Long ago the rule developed in this State that a debtor’s liability is discharged when a check payable to the creditor is wrongfully indorsed by the creditor’s agent and is paid by the drawee bank, and the proceeds converted by the agent. (Sage v Burton, 84 Hun 267; Allen v Tarrant & Co., 7 App Div 172; Morris v Hofferherth, 81 App Div 512, affd 180 NY 545.) The basis for this rule is that the drawer’s only obligation to the payee, upon issuance of the check, is to "see that funds are in the bank”. (Sage v Burton, supra, p 270.) The drawer thereafter has no obligation to examine the check for forged indorsements. (See National Sur. Co. v Manhattan Co., 252 NY 247, 254.) Since checks and drafts are the usual and ordinary *215 means of transferring money in the transaction of business, a contrary rule would add an unnecessary element of risk and uncertainty where payment is made by check to an authorized agent. Because of the time factors involved in processing a check through the depositary bank, intermediate collecting banks and the drawee bank, the discovery of the forgery by the drawer, even if possible, would often be of little practical value to the payee. Moreover, as indicated above, if a check is payable solely to the agent, there is no question that the obligation would be discharged upon payment by the drawee bank. By making the check payable to the creditor, the drawer has given the creditor a measure of protection by requiring the agent to expose himself to criminal prosecution by forging an indorsement before converting the proceeds. (See Burstein v Sullivan, 134 App Div 623, 625, supra.) Therefore, as between the creditor and the drawer of the check, the party who should be required to bear the loss under such circumstances is the creditor. It is the creditor, after all, who selected a dishonest person to represent him, and he, not the drawer, should bear the risk of his unauthorized acts, having placed him in a position to perpetrate the wrong. (Sage v Burton, 84 Hun 267, 270, supra; Morrison v Chapman, 155 App Div 509, 512, 514, supra.) The fact that the agent acted in excess of his authority in forging the indorsement is, of course, no more helpful to the creditor than is the fact that the agent who absconds with a cash payment also acts in excess of his authority. (Morrison v Chapman, supra, at p 514.)
As indicated in the Annotation previously noted, this rationale has not always been given application by our courts. (Bernheimer v Herrman, 44 Hun 110, 113-114; Falk v Starr, 31 Misc 756; Dowdall v Borgfeldt & Co., 113 NYS 1069, affd without opn 134 App Div 954; Siegel v Kovinsky, 93 Misc 541, affd without opn 174 App Div 857; Dobbins v National Union Ins. Co., 70 Misc 2d 1087, affd 79 Misc 2d 241, affd 48 AD2d 828.) In at least one case the attempted payment by check to the agent was held not to discharge the debt on the ground that the drawer unintentionally assisted the agent in appropriating the money by making him a copayee. (Berlowitz v Horowitz, 250 App Div 728.) In the case before us, it seems that the Appellate Division did not consider the line of cases descending from Sage v Burton (84 Hun 267, supra) and premised its holding on the fact that Hertz made its payment to Yudow largely for its own convenience. In holding today *216 that the tort-feasor’s obligation to the claimant was discharged by payment of the proceeds of the settlement to claimant’s attorney, we specifically disapprove of any holding to the contrary.
We note that this resolution squares with the position taken by the American Law Institute in the Restatement Second of Agency.[2] We expressly approve of that provision and hold that it correctly states the law of this State.
Returning to considerations of the law of negotiable instruments, we conclude that our holding today, in the context of the kind of relationship involved, is consistent with section 3-404 of the Uniform Commercial Code, despite the apparent conflict noted earlier. Subdivision (1) of that section provides in part that "[a]ny unauthorized signature is wholly inoperative as that of the person whose name is signed unless he ratifies it or is precluded from denying it”. Since our resolution of the issue before us is based primarily upon the principles of agency, we would hold that a person whose name is forged on an instrument by his agent is, by his unwise selection of this agent, estopped or "precluded from denying” the unauthorized signature.
Finally, we note that this rule is not unduly harsh on a person who has been defrauded in this manner by a dishonest agent. To be sure, the unfaithful agent is an unpromising defendant, and often there is little likelihood of recovering from him. However, generally the creditor could pursue an action for conversion against the drawee bank. (Henderson v Lincoln Rochester Trust Co., 303 NY 27, 31; Spaulding v First Nat. Bank, 210 App Div 216, 217, affd without opn 239 NY *217 586; Uniform Commercial Code, § 3-419, subd [1], par [c].)[3] Unfortunately, that rule does little for the plaintiff in this case as no appeal was taken from the order dismissing her conversion action against Manufacturers Hanover. Our compassion for the plaintiff cannot, however, serve as a basis for granting her relief against Hertz.
Accordingly, the amended judgment should be reversed and Hertz’ motion for summary judgment granted and the complaint dismissed.
Chief Judge Breitel and Judges Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur.
Judgment reversed, without costs, motion by defendant The Hertz Corporation for summary judgment granted and complaint dismissed.

. We are informed that the records of the First Department indicate that Yudow’s name was stricken from the roll of attorneys and counselors at law, on consent, on March 22, 1972.

. The relevant section is as follows:
"§ 178. Agent Authorized to Collect a Debt * * *
"(2) If an agent who is authorized to receive a check payable to the principal as conditional payment forges the principal’s endorsement to such a check, the maker is relieved of liability to the principal if the drawee bank pays the check and charges the amount to the maker.”
This subsection is discussed in comment c: "If a debtor, having an account at a solvent bank sufficient to pay a check, gives to an authorized agent a check payable to the principal in accordance with business customs as conditional payment, he has performed his obligation, and any loss caused by delay because of the conduct of the agent is at the creditor’s risk. Thus, if the drawee bank cashes the check after a forgery and embezzlement by the agent and charges the amount to the debtor, the latter is relieved of his debt. The creditor then would be subrogated to the right of the debtor against the bank. If, in the meantime, the bank becomes insolvent, it is the creditor and not the debtor who loses.”

. It may be argued that such a creditor might also have a cause of action for conversion against the collecting bank. (Spaulding v First Nat. Bank, 210 App Div 216, 217, affd without opn 239 NY 586, supra; Hillsley v State Bank of Albany, 24 AD2d 28, 30, affd without opn after remand 18 NY2d 952.) While we have not yet considered this precise question under the provisions of the Uniform Commercial Code, we note that several courts have held depositary and collecting banks liable for conversion despite what appears to be a clear immunization from such liability in subdivision 3 of section 3-419. (See, generally, White and Summers, Uniform Commercial Code, § 15-4, pp 499-509.) The California Supreme Court has stated, in a case very similar to this one, that "[a] payee, whose endorsement has been forged subsequent to the delivery of a check to the payee or his agent, can sue the collecting bank in conversion.” Navrides v Zurich Ins. Co., 5 Cal 3d 698, 705, n 5 [emphasis added].)
Also uncertain, in light of subdivision 3 of section 3-419, is the continued validity of our pre-Code statement that a collecting bank is liable to the payee, in contract, when it has paid out the proceeds of the check upon the forged indorsement of the payee’s name. (Henderson v Lincoln Rochester Trust Co., 303 NY 27, 32, 33, supra.)
We prefer to withhold resolution of those issues for a proper case squarely presenting such questions.