AMERICAN LODGE ASSOCIATION, INC., Respondent, v EAST NEW YORK SAVINGS BANK, Defendant, and HAMBURG SAVINGS BANK, Appellant.

Second Department, April 2, 1984

APPEARANCES OF COUNSEL

*Aicher, Moffett & Aicher* (*John T. Curran* of counsel), for appellant.

*Ackerman & Raphan* for respondent.

OPINION OF THE COURT

THOMPSON, J.

Plaintiff, a not-for-profit corporation, purchased a certificate of deposit in 1974 from defendant Hamburg Savings Bank (Hamburg). Plaintiff filed a corporate resolution with the bank which, *inter alia,* contained the signatures of three of the corporate officers. The signatures of two of the three officers were necessary to withdraw funds from the

account. The account was terminated in 1976 when the funds contained therein were withdrawn. This action to recover the balance of the certificate of deposit which was withdrawn in 1976 was commenced in 1981, upon a claim that one of the signatures on the withdrawal slips terminating the account had been forged. Hamburg's motion for summary judgment dismissing the complaint as to it was denied by Special Term which, *inter alia,* relied upon section 676 of the Banking Law. On this appeal, Hamburg urges that section 676 is inapplicable to the instant situation, and that it is entitled to summary judgment based upon its affirmative defense of laches. We do not agree, and affirm the order appealed from.

In its complaint, plaintiff alleged that Hamburg had been negligent in comparing the signatures on the withdrawal slips with the authorized signatures on record with the bank when it paid out the funds in the account in 1976. Hamburg's answer contained four affirmative defenses: (1) Hamburg's payment of the funds in the account to the alleged representatives of plaintiff in April, 1976 satisfied its obligations to plaintiff; (2) the Statute of Limitations; (3) laches, based upon the lengthy delay in the discovery of the alleged larceny and the notification of Hamburg; and (4) under applicable provisions of the Not-For-Profit Corporation Law, the failure of plaintiff to comply with annual financial report provisions[*] rendered plaintiff solely responsible for the loss which occurred.

By notice of motion dated May 3, 1982, Hamburg requested summary judgment dismissing the complaint as to it. The affidavit in support of the motion contained the argument that when Hamburg, in April, 1976, issued two checks, drawn on Manufacturers Hanover Trust Company (Manufacturers) and payable to plaintiff's order which covered all of the funds in the account, and then delivered the checks to plaintiff's purported representatives, its "responsibilities to Plaintiff ended". It was also asserted that the failure to discover the larceny until at least April, 1980, when a letter was received from plaintiff's attorney notifying it of a potential claim, resulted in Hamburg's inability to pursue the alleged forger or investigate the

---

[*] The allegation of noncompliance was made "upon information and belief".

possibility that a forgery had occurred. As a consequence, it was plaintiff who had to bear the loss.

In an affidavit in opposition to the motion, plaintiff's attorney argued that a fact question was presented as to whether Hamburg exercised ordinary care and diligence in ascertaining if the person to whom the check was issued was entitled to withdraw the funds, and that a failure to exercise ordinary care would result in Hamburg's liability for the loss even if plaintiff had been dilatory in examining its books and records.

In a reply affidavit, Hamburg made the following argument:

"The Court's attention is directed to Section 676 of the New York State Banking Law, which is recited in its entirety as follows:

'Any withdrawal of moneys from any savings account or time deposit account maintained in any banking organization, branch of a foreign banking corporation, national bank, federal savings and loan association or federal credit union located in this state which is made by means of an unauthorized signature is wholly inoperative as to the person whose name is signed unless such person has authorized or ratified such withdrawal or is precluded from denying such withdrawal because he has received a portion of the funds withdrawn, provided that in such latter event he shall be precluded from denying such withdrawal only with respect to the funds so received; *provided, however, that such a signature shall operate as the signature of the unauthorized signer in favor of any such banking organization, branch of a foreign banking corporation, national bank, federal savings and loan association or federal credit union which has, in good faith, honored such withdrawal.* No such banking organization, branch of a foreign banking corporation, national bank, federal savings and loan association or federal credit union shall interpose the defense, in an action for recovery by a depositor of money paid upon an unauthorized signature, that it has exercised due care and diligence in ascertaining the identity of the person to whom it has paid such money. The term "unauthorized signature" shall have the meaning ascribed to it by section

1-201 of the uniform commercial code and the term "savings account" shall include shares issued by a savings and loan association, state or federally chartered, and by a credit union, state or federally chartered.

'Any waiver of the provisions of this section or any contrary agreement, by-law, rule or regulation of any banking organization, branch of a foreign banking corporation, national bank, federal savings and loan association or federal credit union located in this state shall be void as against public policy and wholly unenforceable.'

"The Court's attention is invited to the underlined part of the statute. HAMBURG SAVINGS BANK is a banking organization and it has in good faith honored a withdrawal based on 'such a signature'. The cited section serves as a complete defense to the Bank, particularly in view of the fact that this Defendant exercised more than ordinary care by insisting upon payment by check to the corporate Plaintiff." (Emphasis added.)

Hamburg also argued that it never "paid the item" because it merely drew a teller's check to plaintiff's order, and it was the drawee bank, Manufacturers, which paid the item. It further contended that the instant case was covered by the Court of Appeals decision in *Hutzler v Hertz Corp.* (39 NY2d 209).

In *Hutzler* (*supra*), Hertz Corp. settled a personal injury action, and issued a settlement draft which named plaintiff and her attorney as payees. The attorney negotiated the draft on plaintiff's forged indorsement and appropriated the proceeds. The complaint alleged that Hertz had been negligent in comparing the forged signature with plaintiff's signature on the settlement agreement. In holding that Hertz was entitled to summary judgment dismissing the complaint, the court stated (p 215): "Therefore, as between the creditor and the drawer of the check, the party who should be required to bear the loss under such circumstances is the creditor. It is the creditor, after all, who selected a dishonest person to represent him, and he, not the drawer, should bear the risk of his unauthorized acts, having placed him in a position to perpetrate the wrong. (*Sage v Burton,* 84 Hun 267, 270, *supra; Morrison v Chapman,* 155 App Div 509, 512, *supra.*)" Hamburg urged that

this same principle of law applied to the instant situation and shielded it from liability.

Special Term denied the motion for summary judgment dismissing the complaint as to Hamburg. It reasoned that plaintiff stated a viable cause of action under section 676 of the Banking Law, and the laches defense could not be disposed of on the basis of the papers before it. We now affirm.

Section 676 of the Banking Law provides, *inter alia,* in simple and direct language, that when a bank pays out funds from a savings or time deposit account based on an unauthorized signature, it is the bank, rather than the depositor, that must bear the burden of any loss resulting therefrom because the withdrawal is wholly inoperative as to the depositor. It is no defense that the bank exercised due care and diligence in ascertaining the identity of the person to whom it has paid the money. This statute directly covers the instant factual allegations of the complaint. Accordingly, it was correct to deny the motion for summary judgment dismissing the complaint as to Hamburg.

Hamburg's strained interpretations of the statute are unavailing. Hamburg urges that a defense of payment is not barred by the statute, but only a defense of due care and diligence, "and it is the essence of Appellant's defense that by issuing its check to its depositor it made payment in good faith". This argument, if accepted, would undermine the entire import of the statute, which provides that a withdrawal based on an unauthorized signature is "wholly inoperative" as to the depositor (see, generally, McKinney's Cons Laws of NY, Book 1, Statutes, §§ 96, 144, 145). A statute must be read in a manner which furthers its purposes and avoids rendering the statute ineffectual. The underlying question raised by this action is whether the check was in fact issued to Hamburg's depositor, and the mere placement of the depositor's name on the check representing the funds withdrawn is of no significance to the depositor if in fact a forger received the check and was able to obtain the funds represented by the check by way of a second forged indorsement. To hold otherwise would be contrary to the clear language of the statute. The Legislature has determined that it is the bank that bears the

burden of loss where payment is made on a forged signature, and this court must give effect to the legislative intent.

Hamburg's other arguments are equally unconvincing. Hamburg has focused on the language that "a[n] [unauthorized] signature shall operate as the signature of the unauthorized signer in favor of any such banking organization * * * which has, in good faith, honored such withdrawal" to argue that its alleged good-faith payment shields it from any potential liability. It is clear that this quoted language, taken within the context of the entire statute, defines a banking organization's rights vis-à-vis the forger, and does not provide a defense vis-à-vis the bank's depositor. Hamburg's interpretation of this language would, in effect, render the remaining language of the statute a nullity. It must therefore be rejected.

Hamburg argues that section 676 is inapplicable because it deals only with "[a]ny withdrawal of moneys" and the withdrawal here, by way of a check drawn on Manufacturers, was not a "withdrawal of moneys" (see, generally, Uniform Commercial Code, §§ 1-201, 3-104, 3-107). Hamburg argues, in essence, that section 676 of the Banking Law applies only to cash withdrawals and not check withdrawals drawn on other banks. It urges that Manufacturers, as the drawee bank, is responsible for any "withdrawal" which occurred. We reject this argument as being contrary to both the language and purpose of section 676. Section 676 governs the rights of one who maintains an account in a banking organization, and plaintiff's account is with Hamburg, not Manufacturers. It is Hamburg, not Manufacturers, that had the authorized signatures of plaintiff's representatives in its files and was in a position to discover the forged indorsements on the withdrawal slips. If the phrase "withdrawal of moneys" was not read in the broader sense to cover withdrawals by check, the bank, which has the direct contact with the customer, uses the deposited funds for its own purposes, and has the authorized signatures in its possession, could avoid its responsibility by paying out withdrawals with checks drawn on different drawee banks. There is no indication the Legislature intended this unnecessarily narrow interpretation of

"withdrawal of moneys" (McKinney's Cons Laws of NY, Book 1, Statutes, §§ 111, 114, 127). It is the bank where an account is maintained which bears responsibility for allowing a withdrawal based on a forged indorsement, and this obligation to protect a customer's funds may not be shifted so easily.

Hamburg's reliance on *Hutzler v Hertz Corp.* (39 NY2d 209, *supra*), is misplaced. In *Hutzler* the drawer of the check was not a banking institution covered by section 676 of the Banking Law. The drawer was not in the business of safeguarding deposits, and it had no way to compare the forged indorsement with the true signature until after the instrument had been negotiated through the drawee bank. The same does not apply here. Furthermore, not every creditor who entrusts a check to a dishonest person bears responsibility for a loss arising thereby as against the drawer of the check (see *Tonelli v Chase Manhattan Bank, N. A.,* 41 NY2d 667).

We also agree with Special Term's conclusion that the record provides an inadequate basis for disposing of the laches defense within a summary judgment context. Accordingly, the order appealed from must be affirmed.

TITONE, J. P., LAZER and MANGANO, JJ., concur.

Order of the Supreme Court, Nassau County, entered August 19, 1982, affirmed, without costs or disbursements.