[861 NE2d 813, 829 NYS2d 449]

B.D.G.S., Inc., Respondent, v Anthony Balio et al., Defendants, and Savings Bank of Utica, Appellant.

Argued November 14, 2006; decided December 21, 2006

**POINTS OF COUNSEL**

*Getnick Livingston Atkinson Gigliotti & Priore, LLP,* Utica (*Janet M. Richmond* and *Patrick G. Radel* of counsel), for appellant. I. Under this Court's ruling in *Spielman v Manufacturers Hanover Trust Co.* (60 NY2d 221 [1983]) Savings Bank of Utica was entitled to judgment as a matter of law. (*Maxton Bldrs. v Lo Galbo,* 68 NY2d 373; *Federal Ins. Co. v Manufacturers Hanover Trust Co.,* 157 AD2d 460; *Underpinning & Found. Constructors v Chase Manhattan Bank, N.A.,* 46 NY2d 459; *Prudential-Bache Sec. v Citibank,* 73 NY2d 263; *Jones v Community Bank of Sullivan County,* 306 AD2d 679; *Tette v Marine Midland Bank,* 78 AD2d 383.) II. In the alternative, the claims against Savings Bank of Utica must be dismissed because there was no proof of unjust enrichment—a requirement for money had and received claim. (*State of New York v Barclays Bank of N.Y.,* 76 NY2d 533; *Miller v Schloss,* 218 NY 400; *Board of Educ. of Cold Spring Harbor Cent. School Dist. v Rettaliata,* 78 NY2d 128; *Parsa v State of New York,* 64 NY2d 143; *Middle E. Banking Co. v State St. Bank Intl.,* 821 F2d 897; *Calisch Assoc. v*

*Manufacturers Hanover Trust Co.,* 151 AD2d 446; *Bank of Castile v Salerno,* 99 AD2d 663; *Henderson v Lincoln Rochester Trust Co.,* 303 NY 27; *Moch Co. v Security Bank of N.Y.,* 176 App Div 842; *Hutzler v Hertz Corp.,* 39 NY2d 209.)

*Mackenzie Hughes, L.L.P.,* Syracuse (*Nancy L. Pontius* of counsel), for respondent. I. The Appellate Division correctly denied Savings Bank of Utica's (SBU) motion for summary judgment and affirmed the judgment against it based upon SBU's failure to act in accordance with reasonable commercial banking standards. (*Jones v Community Bank of Sullivan County,* 306 AD2d 679; *Moore v Richmond Hill Sav. Bank,* 117 AD2d 27; *Heffernan v Norstar Bank of Upstate N.Y.,* 125 AD2d 887; *Tette v Marine Midland Bank,* 78 AD2d 383, 54 NY2d 681; *Lawyers' Fund for Client Protection of State of N.Y. v Gateway State Bank,* 273 AD2d 565; *Belmar Trucking Corp. v American Trust Co.,* 65 Misc 2d 31; *Shivers v Citibank, N.A.,* 12 AD3d 248; *Holland Am. Cruises, N.V. v Carver Fed. Sav. & Loan Assn.,* 60 AD2d 545; *Home Ins. Co. v Manufacturers Hanover Trust Co.,* 203 AD2d 125.) II. *Spielman v Manufacturers Hanover Trust Co.* (60 NY2d 221 [1983]) is not controlling on the issue of whether Savings Bank of Utica acted in accordance with reasonable commercial standards. (*Horovitz v Roadworks of Great Neck,* 76 NY2d 975; *Underpinning & Found. Constructors v Chase Manhattan Bank, N.A.,* 46 NY2d 459.) III. A holding that as long as a bank follows a restrictive indorsement it has acted in accordance with commercially reasonable standards would be contrary to language and intent of the UCC, would make bad law, and would conflict with a substantial body of case law. (*Federal Ins. Co. v Manufacturers Hanover Trust Co.,* 157 AD2d 460; *Tette v Marine Midland Bank,* 78 AD2d 383; *Moore v Richmond Hill Sav. Bank,* 117 AD2d 27.) IV. A pre-UCC claim for money had and received against a bank that accepts a forged check for deposit does not require a showing that the bank retained any of the proceeds of the check. (*Henderson v Lincoln Rochester Trust Co.,* 303 NY 27; *Moch Co. v Security Bank of N.Y.,* 176 App Div 842, 225 NY 723; *State of New York v Barclays Bank of N.Y.,* 76 NY2d 533; *Calisch Assoc. v Manufacturers Hanover Trust Co.,* 151 AD2d 446; *Parsa v State of New York,* 64 NY2d 143; *Bank of Castile v Salerno,* 99 AD2d 663.) V. A finding that UCC 3-419 (3) applies to B.D.G.S., Inc.'s claim for money had and received will have no impact on the judgment. (*People v Bank of N. Am.,* 75 NY 547; *Moore v Richmond Hill Sav. Bank,* 117 AD2d 27; *Moch Co. v Security Bank of N.Y.,* 176 App Div 842; *Alumax Aluminum Corp. v Norstar Bank,* 168

AD2d 163; *Tette v Marine Midland Bank,* 78 AD2d 383; *Hutzler v Hertz Corp.,* 39 NY2d 209; *Hechter v New York Life Ins. Co.,* 46 NY2d 34; *Lawyers' Fund for Client Protection of State of N.Y. v Gateway State Bank,* 273 AD2d 565.)

### OPINION OF THE COURT

CIPARICK, J.

The primary issue presented by this appeal is whether defendant Savings Bank of Utica's (SBU) actions conformed to reasonable commercial standards as a matter of law under Uniform Commercial Code § 3-419 (3) when it complied with restrictive indorsements on checks submitted for deposit. SBU also asserts that any liability under section 3-419 (3) should be limited to the amount of proceeds remaining in its possession. We hold that compliance with a restrictive indorsement does not establish compliance with reasonable commercial standards as a matter of law and that SBU's liability is not limited to proceeds remaining in its possession.

B.D.G.S., Inc., a New York corporation with headquarters in the state of Washington, owns a warehouse in Utica, New York. In 1991, a representative of B.D.G.S. entered into an oral agreement with two local men—defendants Anthony Balio and his employee, Peter Duniec—to manage the warehouse. Their responsibilities included finding tenants and collecting rent, which was then to be forwarded to B.D.G.S. and deposited into its bank account in Washington. Balio and Duniec formed the Beechgrove Warehouse Corporation and maintained a business account in that name at SBU.

Between 1996 and 2000, B.D.G.S. believed that one of its tenants, Rite-Aid, had been falling behind and failing to make its rent payments. As B.D.G.S. later discovered, Rite-Aid had been making the payments, but 16 checks had been indorsed to Beechgrove Warehouse and deposited into Beechgrove's own SBU account. The checks had been made payable to DBGS (an apparent typographical error). With minor variations, there was a handwritten indorsement on the back of each check stating, "DBGS, Inc.
Pay to the order of
Beechgrove Warehouse
For Deposit"
with Beechgrove's SBU account number underneath. A substantial refund check from Niagara Mohawk in the amount of

$427,781.82 had similarly been indorsed and deposited in the SBU account. B.D.G.S. commenced this suit in February 2001 (and by amended complaint of November 2002) against SBU, Balio, Duniec, Beechgrove Warehouse and B. & R. Motor Express, Inc. (another corporation allegedly owned by Balio) asserting several causes of action. As relevant for purposes of this appeal, B.D.G.S. brought a claim against SBU for money had and received.

B.D.G.S. moved for partial summary judgment on the issue of liability and, in support of the motion, produced a memo from SBU concerning the bank's policy on depositing checks payable to business accounts. The memo states that checks "are to be deposited only to the business account of the named payee. They are not to be deposited to an individual account even though the payee may be an officer of the business." B.D.G.S. also produced the deposition testimony of Richard Callahan, an SBU senior vice-president, who testified that it was a violation of bank policy and reasonable banking standards to deposit the checks into an account other than that of the named payee. Finally, B.D.G.S. provided the affidavit of a banking expert, John Burdiss, concluding that SBU violated its own policies as well as reasonable commercial standards.

Supreme Court denied B.D.G.S.'s motion for partial summary judgment against SBU on the issue of liability, finding issues of fact as to whether the indorsements were forged or were authorized by B.D.G.S. The court also denied SBU's cross motion for summary judgment dismissing the complaint. The Appellate Division affirmed, finding that B.D.G.S. raised an issue of fact as to whether SBU's actions with respect to the checks were commercially reasonable.

At trial, Callahan changed his position and testified that he had been mistaken at his deposition. He stated that at the deposition he had been focusing on the payee on the front of the check. However, at trial he testified that SBU had not violated reasonable banking standards because it had complied with the indorsements on the back of the checks. Burdiss testified that several factors should have alerted SBU that the indorsements were improper. Notably, the handwriting on both indorsements was the same. Also, the account activity was unusual in that Beechgrove did not typically process checks or carry a balance as large as the check from Niagara Mohawk. Indeed, checks had bounced from the Beechgrove account and its balance was apparently low prior to the

Niagara Mohawk check. Moreover, it was "not the standard" for the bank to deposit a check into one business account that was drawn to another business.

The jury found that SBU had not acted in accordance with reasonable commercial standards by accepting the checks for deposit. Supreme Court denied SBU's posttrial motions to set aside the verdict and for judgment notwithstanding the verdict and entered judgment in favor of plaintiff in the amount of $1,152,933.83. The Appellate Division affirmed, finding legally sufficient evidence to support the jury's verdict that SBU did not act in a commercially reasonable manner. We granted SBU leave to appeal and now affirm.

Section 3-419 (3) of the Uniform Commercial Code provides that

> "[s]ubject to the provisions of this Act concerning restrictive indorsements a representative, including a depositary or collecting bank, who has in good faith and in accordance with the reasonable commercial standards applicable to the business of such representative dealt with an instrument or its proceeds on behalf of one who was not the true owner is not liable in conversion or otherwise to the true owner beyond the amount of any proceeds remaining in [its] hands."

As to restrictive indorsements,[1] the UCC states that, where there is an indorsement such as "for deposit," the transferee "must pay or apply any value given by him for or on the security of the instrument consistently with the indorsement and to the extent that [it] does so [it] becomes a holder for value" (UCC 3-206 [3]). SBU's primary argument is that it is not liable under B.D.G.S.'s claim for money had and received because it complied with the restrictive indorsements on the checks.

---

1. "An indorsement is restrictive which either
   "(a) is conditional; or
   "(b) purports to prohibit further transfer of the instrument; or
   "(c) includes the words 'for collection', 'for deposit', 'pay any bank', or like terms signifying a purpose of deposit or collection; or
   "(d) otherwise states that it is for the benefit or use of the indorser or of another person" (UCC 3-205).

Section 3-419 (3) limits the liability of representatives—including, as relevant here, depositary banks.[2] As long as the bank complies with any restrictive indorsements and acts in good faith and in accordance with reasonable commercial standards, its liability will be limited to "the amount of any proceeds remaining in [its] hands" (UCC 3-419 [3]). Since the statute provides that the bank will not be "liable in conversion or otherwise," the defense applies to a claim for money had and received.

SBU argues that compliance with the restrictive indorsements is tantamount to acting in accordance with reasonable commercial standards under the statute. In support of this argument, SBU relies on *Spielman v Manufacturers Hanover Trust Co.* (60 NY2d 221 [1983]). In that case, an attorney forged the payee's indorsement on a settlement check made out to a law firm, and the drawer of the check commenced an action against the depositary bank.

*Spielman* is inapposite. Most notably, the party bringing suit in *Spielman* was the drawer of the check, rather than—as here—the payee. The Court observed that a drawer generally will not have a cause of action against a depositary bank; "either the forgery is effective to transfer the instrument . . . [or] the depositary has received nothing of the drawer for which the drawer may recover" (*Spielman*, 60 NY2d at 224). In those situations, the drawer's cause of action is against the drawee. However, the drawer will be permitted to recover from the depositary bank in the limited circumstances "when the depositary has acted wrongfully and yet the drawee has acted properly in honoring the check because the forgery is effective" (*Spielman*, 60 NY2d at 225, citing *Underpinning & Found. Constructors v Chase Manhattan Bank, N.A.*, 46 NY2d 459, 466 [1979]). There are no such limitations placed on a payee's ability to sue the depositary.

SBU places great emphasis on *Spielman*'s holding that

"[i]t is the direction to deposit to the account of the customer and the bank's action in honoring that direction which . . . establishes that the bank's action accorded with reasonable business practice for there are many instances in which a family member or a business may indorse for deposit funds to the

---

**2.** A depositary bank is "the first bank to which an item is transferred for collection even though it is also the payor bank" (UCC 4-105 [a]).

credit of another and a depositary is not on notice of chicanery because of it nor is it liable if it faithfully follows such a direction" (*Spielman*, 60 NY2d at 228).

However, *Spielman* did not deal with section 3-419 (3). In addition, it did not hold that, in all cases, compliance with restrictive indorsements is commercially reasonable. Plainly, there are situations where following the indorsements would not be reasonable. For example, it would not be reasonable for a bank to deposit a check according to restrictive indorsements that it had good cause to know were forged. Thus, compliance with such indorsements cannot be considered commercially reasonable as a matter of law under all circumstances.

In this case, the record supports the affirmed findings that SBU's actions were not commercially reasonable. There was expert testimony concerning aspects of the transactions at issue that should have raised red flags for SBU. Further, there was testimony indicating that the bank did not comply with its own procedures for handling business checks. As a result, the Appellate Division properly determined that SBU did not act in accordance with reasonable commercial standards.

SBU also argues that it was entitled to judgment as a matter of law because B.D.G.S. did not prove that the bank retained any of the proceeds of the checks. If correct, SBU would be immunized from liability since it is apparently undisputed that SBU no longer retains the proceeds. This argument also lacks merit.

As noted above, section 3-419 (3) limits a depositary bank's liability on an action for money had and received only when the bank satisfies the statutory criteria—compliance with restrictive indorsements, good faith and acting in accordance with reasonable commercial standards. Since SBU did not satisfy all of the above criteria, because it did not act in conformity with reasonable commercial standards, the defense is unavailable and the bank's liability is not limited to the amount of the proceeds remaining in its possession.

Rather, SBU's liability is determined by the common-law action for money had and received as it existed prior to the enactment of the UCC. This Court has previously noted that when the Legislature enacted section 3-419, it "did not intend to abrogate the payee's pre-Code common-law rights to sue in assumpsit, for money had and received or unjust enrichment" (*State of New York v Barclays Bank of N.Y.*, 76 NY2d 533, 540

[1990]). Under pre-UCC case law, the bank was liable for the entire amount of the check (*see Henderson v Lincoln Rochester Trust Co.*, 303 NY 27, 32-33 [1951]).[3] According to that rationale, when a bank took a check for collection, it had

> "an obligation to pay the proceeds collected to the true payee owner *in the absence of a valid indorsement*. The moment the collecting bank receives the proceeds it holds money belonging to the owner of the check and becomes a debtor of such owner and of no one else in the absence of a valid indorsement" (*Henderson*, 303 NY at 33).

Thus, it is clear that, under these circumstances, SBU's liability is not limited to the amount of proceeds remaining in its possession.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges ROSENBLATT, GRAFFEO, READ and SMITH concur; Judge PIGOTT taking no part.

Order affirmed, with costs.

---

**3.** This Court has previously questioned, but not decided, whether a depositary bank is liable to a payee given the "immunization language" of UCC 3-419 (3) and whether a bank is still liable in contract beyond the retained proceeds (*see Hechter v New York Life Ins. Co.*, 46 NY2d 34, 38 n 3 [1978]; *Hutzler v Hertz Corp.*, 39 NY2d 209, 217 n 3 [1976]). As stated above, a bank's liability is limited when it meets the section 3-419 (3) criteria. However, when it does not, the pre-UCC *Henderson* rule still applies.