Himrod St. Assoc., L.P. v Andrews (2024 NY Slip Op 50312(U))

[*1]

Himrod St. Assoc., L.P. v Andrews

2024 NY Slip Op 50312(U)

Decided on March 21, 2024

Civil Court Of The City Of New York, Kings County

Basu, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 21, 2024
Civil Court of the City of New York, Kings County

Himrod Street Associates, L.P., Petitioner,

against
Shaquana Andrews, Respondent(s).

Index No. LT-319026-22/KI

Attorneys for Petitioner
Lazarus Karp Ehrlich McCourt, LLP
Seven Penn Plaza 370 Seventh Avenue, Suite 720 
New York, NY 10001
(212) 564-1250
Attorneys for Respondent
Brooklyn Defender Services
177 Livingston Street, 7th Floor
Brooklyn, NY 11201
(718) 254-0700

Shantonu J. Basu, J.

As required by CPLR § 2219(a), the following is a recitation of the papers considered in the review of motion sequence 2.
PAPERS NUMBERED
Notice of Motion, Affidavit/Affirmation & Exhibits 1, NYSCEF # 12-16
Affirmation/Affidavit in Opposition & Exhibits 2, NYSCEF # 20-25
Affirmation in Reply 3, NYSCEF # 26
For the reasons stated below, the court grants Petitioner's motion sequence 2 in part. The court notes that NYSCEF lists this motion as "sequence 2," although there is no "sequence 1."
PROCEDURAL AND FACTUAL BACKGROUND
This is a summary nonpayment proceeding concerning a rent-stabilized apartment.
In February 2023, the proceeding was settled without a final judgment by way of a two-attorney stipulation that called for payment of $6,802.52 as all rent due through February 2023.
In April of 2023, Petitioner moved the court for a final judgment, alleging that Respondent did not pay as contemplated by the stipulation. After adjournments, Respondent's [*2]attorney filed opposition.
Respondent's opposition states that HRA approved Respondent for a grant, colloquially known as a "One Shot Deal," for $6,802.52 and sent two checks to Petitioner for $1,831.36 and $4,971.16.
The check for $1,831.36 was not cashed. The check for $4,971.16 was. The problem is that Petitioner states that it did not cash this second check.
As part of her opposition, Respondent attached a copy of the negotiated check (NYSCEF # 22). The check was made out to "Himrod St Assocs LP." However, the person who endorsed the check seems to be named "James Cortez."
At oral argument, Petitioner's counsel stated that no person by that name works at Petitioner's office.

 LEGAL ANALYSIS
Given the number of One Shot Deal checks HRA issues, it stands to reason that this situation arises frequently. Nonetheless there are surprisingly few, if any, reported decisions dealing with this type of situation in the context of a landlord-tenant proceeding.
The leading case in this area is a Court of Appeals decision titled Hutzler v Hertz. In that case, the Court considered a situation where a driver died while in a car owned by the Hertz Corporation (presumably a rental car). The widow of the driver sued Hertz and the case was eventually settled whereby Hertz was to pay the widow roughly $10,000 (Hutzler v Hertz, 39 NY2d 209 [1976]).
Hertz sent a check to the widow, Hutzler, but Hutzler's attorney endorsed the check and stole the money. The Court's analysis was complicated by the fact that the check was made payable to both Hutzler and her attorney. However, since the attorney forged Hutzler's name this case is applicable to situations where someone other than the intended payee cashes a check.
Hertz argued, with some justification, that it should not have to pay twice. Hertz issued a check to Hutzler, and the check cleared. Naturally, Hutzter argued, also with some justification, that she never got the money.
One can hardly imagine a more sympathetic plaintiff than a grieving widow whose attorney stole a settlement check. It would also be difficult to think of a less sympathetic defendant than a large rental car company that paid out a wrongful death lawsuit.
The Court of Appeals held for the company.
Hutzler v Hertz reasoned that "a debtor's liability is discharged when a check payable to the creditor is wrongfully [negotiated] by the creditor's agent and is paid by the drawee bank, and the proceeds converted by the agent. The basis for this rule is that the drawer's only obligation to the payee, upon issuance of the check, is to see that funds are in the bank. The drawer thereafter has no obligation to examine the check for forged endorsements" (Hutzler, 39 NY2d at 214 [citations omitted]).
The Court further reasoned that "[b]y making the check payable to the creditor, the drawer has given the creditor a measure of protection by requiring the agent to expose himself to criminal prosecution by forging an endorsement before converting the proceeds. Therefore, as between the creditor and the drawer of the check, the party who should be required to bear the loss under such circumstances is the creditor. It is the creditor, after all, who selected a dishonest person to represent him, and he, not the drawer, should bear the risk of his unauthorized acts, having placed him in a position to perpetrate the wrong" (Hutzler, 39 NY2d at 215).
In short, the rule is that when a drawer (in this instance HRA) sends a check to a creditor [*3](in this instance Petitioner), the debt is discharged upon clearance of the check. The only obligation of the drawer is to make certain that there are sufficient funds to clear the check. If the creditor (i.e., Petitioner) did not actually receive the funds, it is the creditor's responsibility to investigate its own staff to discover the bad actor.
Some obstacles must be overcome in order to fairly apply this rule to the instant proceeding. First, and most importantly, it is unclear whether the person who cashed the HRA check really was an agent of Petitioner.
However, the court is familiar with HRA patterns of practice regarding tendering of One Shot Deal payments. The check was made out to the correct business entity, and the check bears Petitioner's address. On these facts, the most reasonable inference is that an employee of Petitioner misappropriated the funds.
A contrary ruling would place the burden of proving who cashed the check on the party least able to conduct an investigation. Unlike Petitioner, Respondent is in a poor position to show how Petitioner processes checks that it receives, who has access to mail, who has access to ledgers, and so on.[FN1]
This overcomes the first obstacle to applying the Hutzler rule to the instant motion.
The second obstacle is that the policies articulated by the Hutzler court are best understood as allocating burdens between private entities and individuals. These policies are, perhaps, less applicable where the check was drafted by a government agency since such agencies have investigatory powers that even the largest banks do not have. Indeed, HRA has a bureau that is solely dedicated to investigating fraud.
In the instant case, HRA knows a great deal about the bad actor, for example the bank ID, account number, and date that the funds were deposited, as well as at least part of the depositor's name (see NYSCEF 22). Therefore, under this view, it would not be unfair to at least place part of the investigatory burden on HRA. The best way of doing that is to require HRA to reissue payment.
However, such a ruling would overlook the underlying realities: Respondent is in jeopardy of eviction in a special proceeding. There is no guarantee that HRA would reissue payment, and the result might be Respondent's eviction. Thus, the burden of loss and investigation should fall upon Petitioner, rather than Respondent or HRA.[FN2]

With these nuances in view, this court's ruling is limited to whether Petitioner can obtain a possessory judgment for the amount of the disputed check. The court makes no determination as to whether Respondent is liable for the debt, but only finds that under the circumstances presented in the case at bar Petitioner cannot obtain a possessory judgment for the amount of the disputed check.
Since the parties agree that the check for $1,831.36 was never cashed, Petitioner's motion is granted to the extent of issuing judgment for this amount but otherwise denied.

 CONCLUSION
For the reasons stated above, it is hereby ordered that Petitioner is entitled to a final possessory judgment in the amount of $1,831.36 as all rent through February 2023.
The warrant shall issue forthwith, but execution of the warrant is stayed until April 22, 2024 for payment of $1,831.36.
The Earliest Eviction Date ("EED") is April 23, 2024, which is interpreted as the first day that a Marshal may serve a Notice of Eviction.
Upon timely payment, the proceeding will be deemed automatically discontinued for all rent through February 2023, without prejudice to the claim for $4,971.16, which may be pursued in a plenary action. Upon a default in payment, the warrant may execute after service of a Marshal's Notice.
This constitutes the decision/order of this court.
Dated: March 21, 2024
Brooklyn, NY
Hon. Shantonu J. Basu
Housing Court Judge

Footnotes

Footnote 1:The Uniform Commercial Code § 3-405 governs what happens when an employee fraudulently negotiates a check. The rule itself is not applicable here since the check was not endorsed using the corporate entity's name. It is nonetheless illuminating to consider the official comment to § 3-405 because the comment adopts a view similar to this court's in terms of burden allocation. In relevant part, the comment states that "the loss should fall upon the employer as a risk of his business enterprise rather than upon the subsequent holder or drawee. [Since] the employer is normally in a better position to prevent such forgeries by reasonable care in the selection or supervision of his employees." NY UCC § 3-405, comment 4.

Footnote 2:However, the court encourages HRA to commence an investigation with its Bureau of Reconciliation and Control.